HALE (UNITED STATES v.). See Case No. 15,279.

## Case No. 5,916.

HALE et al. v. WASHINGTON INS. CO.

[2 Story, 176;[1] 5 Law Rep. 200.]

Circuit Court, D. Massachusetts. May Term, 1842.

MARINE INSURANCE—COLLISION — BETWEEN SAILING VESSELS — WHAT DEEMED A PERIL OF THE SEAS—FRENCH LAW — LIABILITY OF MASTER OF SHIP.

1. The doctrine of De Lovio v. Boit [Case No. 3,776), respecting the jurisdiction of the district courts of the United States. as courts of admiralty, over policies of insurance, affirmed.

[Cited in The Martha Anne, Case No. 9,146; Camden & A. R. Transp. Co. v. The Lotty, Id. 2.337a; The Lotty, Id. 8,524; Gloucester Ins. Co. v. Younger, Id. 5,487; New England Marine Ins. Co. v. Dunham, 11 Wall. (78 U. S.) 35; Insurance Co. of Pennsylvania v. The Waubaushene, 24 Fed. 559.]

2. A collision between two ships on the high seas, whether it result from accident or negligence, is, in all cases. to be deemed a peril of the seas, within the meaning of a policy of insurance.

[Disapproved in General Mut. Ins. Co. v. Sherwood, 14 How. (55 U. S.) 367.]

[Cited in Walker v Boston & Hope Ins. Co., 80 Mass. (14 Gray) 289.]

3. It seems, that by the French law, the underwriter is not liable for those losses by collision, which are solely occasioned by the fault of the assured or his agents.

4. Where a loss by collision arises from the negligence of the master and crew, the master is personally responsible; but the ship also is primarily, although not exclusively, liable for the compensation.

[Cited in Edwards v. The Robert F. Stockton. Case No. 4,297: Sherwood v. General Mut. Ins. Co.. Id. 12.776: New Jersey Steam Nav. Co. v. Merchants' Bank, 6 How. (47 U. S.) 432.]

[Cited in Dyer v. Piscataqua Fire & Marine Ins. Co., 53 Me. 121; Nelson v. Suffolk Ins. Co., 62 Mass. (8 Cush.) 479.]

5. All expenses, resulting as a direct and immediate consequence of a peril insured against. are covered by the policy.

[Cited in Indianapolis Ins. Co. v. Mason, 11 Ind. 180; Nelson v. Suffolk Ins. Co., 62 Mass. (8 Cush.) 492; Blanchard v. Equitable Safety Ins. Co., 94 Mass. (12 Allen) 390.]

6. Where the ship Columbia, through the negligence or fault of her mate and crew, came into collision with the bark Ritchie, by which both vessels sustained damage; and the master of the Columbia, in behalf of his owners, paid to the owners of the Ritchie a certain sum, by way of compromise for the damage sustained by the latter vessel; it was held, that the underwriters

[1] [Reported by William W. Story, Esq.]

on the Columbia were liable for the sum so paid, as well for the damages as for the repairs and losses by the collision, to the Columbia.

[Cited in Williams v. New England Ins. Co., Case No. 17.731.]

[Cited in Nelson v. Suffolk Ins. Co., 62 Mass. (8 Cush.) 477.]

[7. Cited in Providence Washington Ins. Co. v. Wager, 35 Fed. 364, to the point that the remedy against the vessel and the remedy against the owner cannot be united or enforced in the same action.]

[Appeal from the district court of the United States for the district of Massachusetts.]

Libel [by Samuel Hale and another,] on a policy of insurance, on the ship Columbia, for $12,000, dated the fourth of February, 1840, for one year, from the eighth day of the preceding January. Ship valued at $32,000. It appeared from the libel, that the Columbia, in the course of a voyage from Liverpool (England) to New Orleans, via New York, on the 9th of April, 1840, in sailing down St. George's channel, by the fault or mistake of the mate and crew of the Columbia, came in collision with an English barque, called the Ritchie, by which both vessels received considerable damage in their hulls, sails, and rigging. The Columbia proceeded on her voyage; and having on another voyage returned to Liverpool, the owners of the Ritchie demanded of the master of the Columbia, the sum of £738, as damages and expenditures occasioned to the Ritchie by the collision; and the master, to prevent a proceeding in rem. in the English high court of admiralty, for these damages, made a compromise with the owners of the Ritchie, and paid them the sum of £282; and for this sum, as well as the damages for the repairs and losses by the collision on the Columbia, the present suit was brought. The answer substantially admitted the facts as stated in the libel; but denied the liability of the underwriters to repay the said sum, which under 'the compromise had been paid to the owners of the Ritchie. In the court below, a decree was pronounced for the libellants, from which an appeal was taken to this court.

F. C. Loring, for libellants.

B. R. Curtis, for respondents.

For the libellants the argument was as follows: The insurers are liable for the damage done to the Columbia in her hull, &c. if it amounts to an average, although the cause of the collision was negligence on the part of her master and crew. Patapsco Ins. Co. v. Coulter, 3 Pet. [28 U. S.] 220; Waters v. Merchants' Ins. Co., 11 Pet. [36 U. S.] 213; Columbia Ins. Co. v. Lawrence, 10 Pet. [35 U. S.] 507; Williams v. Suffolk Ins. Co. [Case No. 17,738]; Shore v. Bentall, 7 Barn. & C. 798, note. The question is, whether they are not responsible for the other damage suffered at the same time: i. e. for the claim for damages, to which the owners of the Ritchie became entitled. Where a collision happens through negligence, the owners of the injured vessel have a claim upon the offending vessel, which may be enforced by an action in personam or in rem. The liability of the vessel is primary, and that of the owners is secondary; the owners being liable merely from the relation they bear to the vessel, and their liability being limited to its value. The Rebecca [Case No. 11,619]; Rev. St. c. 32, § 1. The liability of the offending vessel arises at the moment of the collision, constitutes a lien upon it, diminishes its value to that extent, and is a loss caused by the collision. This loss happens at the same time and from the same cause, as the damage done to the offending vessel, and both constitute the actual loss to the owners from the collision; and the loss being caused by a peril insured against, collision, the insurers are liable for the whole. The principles on which this claim is founded, are fully discussed in the case of Peters v. Warren Ins. Co. [Case No. 11,035], and 14 Pet. [39 U. S.] 99; and the cases cannot be distinguished in any important respect. In that case, proceedings were instituted, and a decree was given against the vessel. In this case, there was no decree, the claim being settled by compromise. If there had been a decree, finding the facts now admitted or proved, it would have been conclusive, and prevented the necessity of proof: in the absence of a decree, the libellants have been obliged to prove their case. In other respects the decree is immaterial. The whole argument may be stated thus: When the thing insured becomes, by law, chargeable with an expense, contribution, or loss, in consequence of a peril insured against, the law considers that peril as the proximate cause of the loss, &c. and holds the insurers responsible for it. Collision is a peril insured against, and for damages occasioned thereby, the insurers are liable, although it be owing to negligence; and the offending vessel is also liable to make good the damage done to the other vessel. Such liability being a direct consequence of the collision, and the insurers being responsible for damage by collision, they must indemnify the insured, against their liability to the owners of the injured vessel.

For the respondents, the argument was as follows: The owners of the Columbia claim to recover of the underwriters the amount of damages paid by the master to the owners of the Ritchie, for an injury caused by the negligence of the agents of the assured. This proposition seems, however, to be inconsistent with the contract of insurance, and with established principles of law. Mason v. Sainsbury, 3 Doug. 61, 65. The case of Peters v. Warren Ins. Co. [supra] is the only authority relied on, as at all approaching this case; and I propose to compare this case with that decision. In the first place, Judge Story relies on the foreign law. No writer on foreign commercial law has, however, sanctioned such a doctrine; but, on the contrary, all the

writers cited by him, and some whom he does not cite, declare that in case of a collision resulting from the fault of the master or mariners of the assured vessel, the damage must be repaired by him who occasioned it; and that the insurers are not answerable. Poth. Traite d'Assur. Nos. 49, 50; Emerig. Ins. 414, 416; Boucher, 1500–1502; Mod. Code de Com. 350, 407; Sautayra's Com. 7, 223; Boulay Paty, Cours du Droit Com. 14–16; Dig. lib. 9, tit. 2, 1. 29, § 2; Valin, bk. 3, tit. 7, a 11; Bynk. bk. 4, p. 679, cc. 18, 19; Laws, Wisbuy, art. 36. So, also, the law of Hamburg imposed one half the loss on each vessel as a general average. Peters v. Warren Ins. Co. [supra]. To this add, that the owner, by the general maritime law of Europe, might discharge himself from all personal liability, even from torts, by abandoning the ship and freight. The Rebecca [Case No. 11,619]. There is not the least reason to suppose, that it created any liability of the master or owner. The Rebecca [supra]. It was therefore, a charge imposed on the vessel, and the vessel only, as her share of the common calamity. In this case by the English law, the owner of the Ritchie has a claim, first, on the master, for he is liable for the negligence of the officers and crew. Curt. Merch. Seam. 204, 205, and cases. Second, on the owner. The Dundee, 1 Hagg. Adm. 113. Third, the marine law gives him a lien on the vessel as a security for the damages. It is manifestly only as a security, that he has this lien; it is subsidiary to his claim against the master and owners, and it is precisely like the mariners' lien. 2 Dod. 85; Valin, bk. 3 tit. 7, art. 11; Code de Com. art. 407. This distinction has several important applications. Suppose the owner to be in England, and the ship to be elsewhere, and he is sued and pays, could he recover? What ground of claims would there be against the underwriters? He, as owner, has been held responsible for damages done to a foreign ship, on account of the negligence of his servants. It is clear, that this would afford no pretence of claim. Can it vary the case, that in the owner's absence the vessel is arrested? Certainly not; for this would leave the liability of the underwriters to caprice or accident.

We now come to the most important question: Was this loss imposed on the vessel in consequence of a peril insured against? The loss is for damages occasioned by the tort of the servant of the assured. This is manifestly so; for if there had been no tort, the vessel would not be liable. It is no answer to say, that the underwriters are liable for a loss occasioned by a peril of the sea, the negligence of the master being the remote cause. In the case of Peters v. Warren Ins. Co. [supra], the peril of the sea was the immediate cause of the loss; but in the present case, the tort is the immediate and efficient cause. If the peril of the sea injures the vessel insured, it is no answer to say, that the peril was caused by negligence; for the peril is the cause. If a peril of the sea injures a vessel not insured, and the law, in consequence of the peril, imposes a part of that loss on the vessel insured, the peril is the cause of the loss. But if a peril of the sea injures another vessel, and the law imposes the loss on the assured, solely in consequence of the negligence of his servants, which negligence turns the disaster into a wrong, it is the negligence which is the sole cause of the loss. As long as it is a mere peril of the sea, the injured vessel recovers nothing. It is only by showing it to be a tort, that a recovery can be had; and no loss has ever fallen on the owners, or on the vessel, except by payment in their own wrong.

The owners are not bound to indemnify the master. They had a mere lien on the vessel, which has been discharged by the master. As to the question of general average, there is no evidence of the damage actually done to the Richie. Again; there is, in the answer, no denial of the fact, that the master was guilty of negligence. Indeed, there is primâ facie evidence of negligence on his part; for the vessel was going before the wind when she came in collision with the vessel on the wind. Besides, the insured is not entitled to an indemnity for money paid as damages, for an injury occasioned by a peril not insured against. 3 Maule & S. 318; Godsall v. Boldero, 9 East, 72.

Mr. Loring, in reply. If the authorities cited, establish the point, that insurers are not liable for damage by collision owing to negligence, then the modern differs from the ancient law in this respect. No such consequence as is supposed, would follow, if both vessels were insured by the same person, i. e. that the insurer would pay a double loss. He is liable only to indemnify the owner. So far as he is indemnified by claims against another, his claim is satisfied; or if the insurer pays the loss, he thereby becomes substituted as to the claim for damages. See 2 Phill. Ins. 128; Godsall v. Boldero, 9 East, 72. It is said, that if a collision had been without fault, the owners of the Ritchie would have had no claim on the Columbia, and there would have been none on the insurers of the latter, and therefore, this claim owes its existence to there being negligence on the part of the Columbia. The objection to this argument is, that it goes behind the immediate cause, the collision, to find the remote cause. There would be no difficulty in maintaining the claim, if the owners of the Columbia had been sued in personam, and paid the loss on a judgment against them. The liability of the vessel existed, and it cannot be material in what manner it was discharged.

STORY, Circuit Justice. This is an appeal from a decree of the district court, sitting in admiralty, upon a libel brought upon a policy of insurance. Nearly twenty-seven years have elapsed since in the case of De

Lovio v. Boit [Case No. 3,776] I had occasion to consider and to affirm the jurisdiction of the district courts of the United States, as courts of admiralty, over policies of insurance. I have not unfrequently been called upon in the intermediate period to re-examine the same subject, and I wish now only to state, that I deliberately adhere to the doctrine therein stated. Indeed, in the various discussions, which have since taken place, here, and elsewhere, I have found nothing to retract, and nothing to qualify, in that opinion, in respect to the true nature and extent of that jurisdiction, and its importance to the commercial and maritime world. To no nation is it of more importance and value, to have it preserved in its full vigor and activity, than to America, as one of the best protections of its maritime interests and enterprises. I rejoice to find, also, that, by a recent act of parliament, the admiralty in England has been restored to many of the powers and privileges, and much of the jurisdiction, which it anciently maintained, and which has been studiously withdrawn from it for the two last centuries by the ill-considered prohibitions of the common law. See St. 3 & 4 Vict. c. 65; 3 Hagg. Adm. Append. p. 436, note. It was my hope and expectation, many years ago, that the jurisdiction of the admiralty over policies of insurance, would have been finally settled in the supreme court of the United States, in a cause from this circuit then pending before it. But the cause went off without any decision. But I have reason to believe that, at that time, my learned brothers, Mr. Chief Justice Marshall and Mr. Justice Washington, were prepared to maintain the jurisdiction. What the opinion of the other judges then was, I do not know; but I have no reason to believe, that a majority of them were opposed to the jurisdiction. Since that period, I have often expressed a determination, whenever any cause of sufficient magnitude to be carried to the supreme court, by appeal, should arise in this circuit, not to act upon the merits of it, until the question of the jurisdiction of the court over policies of insurance should be settled in the highest court. The sum in controversy, in the present case, falls below that necessary to maintain the appellate jurisdiction; and, therefore, it is my duty to decide the questions involved in it upon their own merits.

The cause has been very ably and ingeniously argued; and turns upon some niceties, which have not as yet come into direct and positive judgment in any former case. The first point naturally presented is; When and under what circumstances, a collision between two ships on the high seas is to be deemed a peril of the seas? And I take it to be now clearly established, that a collision is, in all cases, deemed a peril of the seas, within the words of a policy of insurance, not only when it resulted from accident (see Buller v. Fisher, 3 Esp. 67; 2 Phill. Ins.

2d. Ed., p. 635. c. 13, § 8; Peters v. Warren Ins. Co., 14 Pet. [39 U. S.] 99), but also when it has been occasioned by the fault or negligence of either ship, or of both of them. The case of Smith v. Scott, 4 Taunt. 126, is directly in point, that where the loss has happened to the vessel insured by a collision, arising from the fault or negligence of the other vessel, not the subject of the insurance, it is a loss for which the underwriters are liable. The other point was formerly a question of more difficulty; but since the cases of Busk v. Royal Exchange Ins. Co., 2 Barn. & Ald. 73; Walker v. Maitland, 5 Barn. & Ald. 171; Bishop v. Pentland, 7 Barn. & C. 219; Shore v. Bentall, Id. 798, note b; Sadler v. Dixon, 8 Mees. & W. 895; Columbia Ins. Co. v. Lawrence, 10 Pet. [35 U. S.] 507; and Waters v. Merchants' Louisville Ins. Co., 11 Pet. [36 U. S.] 213, it must be deemed at rest in England and in the courts of the United States. In these cases, it was held, that where a loss occurs from a peril insured against, there it is a loss to be borne by the underwriters, although it may have been occasioned by the negligence of the master and crew. And this doctrine not only stands upon the maxim, "Causa proxima, non remota spectatur"; but upon the more general ground, that the underwriters take upon themselves all losses by the perils insured against, without any reference to the fact, whether they are attributable to the negligence or default of the master and crew, or to mere accident or irresistible force. There being no such exception in the words of the policy, the policy of the law does not create one; as the owner can, in most cases, be in no better a condition to guard himself against a loss by the negligence of his agents, than he is to guard against a loss by accident or irrisistible force. He does not warrant the fidelity of his agents, but merely their capacity and ability.

The case of Peters v. Warren Ins. Co., 14 Pet. [39 U. S.] 99, completely covers the third case, where there is a mutual loss to both ships by collision, which is properly chargeable and apportionable on both in rem, whether that loss be by accident or by mutual fault. A different rule may prevail, and indeed seems to prevail, in the French law, making the underwriters liable for losses by collision occasioned by accident, or the fault of the other party; but not for losses occasioned by the fault of the assured or his agents. Pothier, and his excellent commentator, Estrangin, and Valin and Emerigon, hold this doctrine. Poth. Traite d'Assur. 2, 49, n. 50; Estrangin's Notes, Id.; 1 Emer. Assur. p. 411, c. 12, § 14; Id. (Ed. 1783) pp. 414, 417, 418; 2 Valin, Comm. bk. 3, p. 177, tit. 7, art. 10; Id. p. 183, art. 11; Code de Comm. arts. 350, 407. But it has not received any sanction in our law; and, after all, as it stands upon mere general reasoning, it is open to some question,

both as to its policy and practical convenience. It is sufficient, however, to say. that in a case of difference between us and foreign writers as to the interpretation of the true rules of commercial law, we must follow our own decisions and doctrines, in preference to theirs. But an attempt has been made to distinguish ·the present case from the foregoing, upon various grounds; first, that the loss is primarily a personal charge upon the master, who committed the fault; secondly, that it is a charge personally upon the owner; thirdly, that the ship is liable only as a collateral security for the damages. It is hence inferred, that as the charge was not actually fixed upon the ship by any decree, but was paid by the master on the owner's personal account, the loss is not a loss on the ship insured; but a mere personal loss of the owner, which the underwriters are not bound to compensate.

Now. I agree, that where the loss by collision arises from the negligence of the master and crew, the master is personally responsible for the damages, and the owner is also personally responsible. But it is by no means true, that the ship is, therefore, to be treated only as secondarily liable for the loss, in aid of, or as security for, the master and owner. On the contrary, as I understand it, the ancient law of the admiralty holds the ship to be the offending or guilty party, and, therefore, primarily, although not exclusively, liable for the compensation. The judgment of Lord Stowell in the case of The Dundee, 1 Hagg. Adm. 109, 120, 122, recognizes this doctrine, if it does not proceed upon it as its true foundation. Indeed, the common course in the admiralty is to proceed against the ship in rem for ·the damage, whenever she can be reached, and this is not only a proper course, but in many cases almost indispensable, as the owner is now by statute not liable ordinarily for damages beyond the value of the vessel and her appurtenances and freight, which must be first ascertained and established. See St. 53 Geo. III. c. 159; The Dundee, supra; The Richmond, 3 Hagg. Adm. 431. Indeed, the argument admits, that by the general (perhaps not the universal) maritime law of the continent of Europe, the owner may escape all personal liability by abandoning the guilty ship and freight to the injured party. This of itself would seem to show, independently of any statute provisions, that the liability for losses by collision is primarily understood to be a charge on the ship itself, and that so far from the ship being a mere collateral security for the damages, in aid of the personal responsibility of the owner, he is to be deemed, under the present British law, as well as the maritime law of the continent, as rather a collateral security for the guilty ship, to the amount of her value and the value of the freight, and, at most, personally responsible only when they are not forthcoming to the amount of their value.

The citations from the Digest prove nothing more than the responsibility of the offending mariners for the loss, which I suppose to be undeniable. "Si navis tua impacta in meam scapham, damnum mihi debit," &c.; "si in potestate nautarum fuit, ne accideret, et culpa eorum factum sit, lege Aquilia cum nautis agendum." Dig. lib. 9, tit. 2, 1. 29, ·§ 2. And again; "Si navis alteram contra se venientem obruisset; aut in gubernatorem, aut ducatorem, actionem competere damni injuriae. Sed si tanta vis navi facta sit, quae temporari non potuit, nullam in dominum dandam actionem; sin autem culpa nautarum id factum sit, puto (says Ulpian) Aquiliae sufficere." Dig. lib. 9, tit. 1, 1. 29, § 4. But this personal responsibility does not, at least in modern times, exclude, or supersede, or qualify the right to proceed in rem against the offending ship. My learned friend, Judge Ware, of the district court of Maine, in his able opinion in the case of The Rebecca [Case No. 11,619], has fully expounded this doctrine, and traced it up to its fountain head.

But it does not strike me, that it is at all material in the present case to establish, whether the ship or the owner is primarily liable for the loss sustained by the Ritchie, or whether they were each liable pari passu, and in solido. Suppose the ship had been actually arrested under the admiralty process in England, as clearly must have been (see The Christiana, 2 Hagg. Adm. 183; The Johann Friederich, W. Rob. Adm. 35); and the master had made the compromise, which is not denied to have been fairly and reasonably made, or suppose a decree had passed against the ·ship, and the master had paid the money to deliver the ship from a sale, or to discharge the lien; there cannot, as I think, be the slightest doubt, that the underwriters would have been liable for the charges; for the master would be an agent acting for all concerned under such circumstances. At least, if there be any doubt on this point in any mind, I do not partake of it; and I deem the case of Peters v. Warren Ins. Co., 14 Pet. [39 U. S.] 99, a direct authority in favor of it. What possible difference can it make in law, if the charge is a fixed lien in rem, and properly chargeable on the ship, that it has been paid without any legal process or proceedings? If the master pays for a salvage service to the ship without process, is it less a charge on the underwriters, than if it had been adjudged under a decree in the admiralty? If a ransom is paid to enemies or pirates by the master bona fide out of property on board, or other funds, to deliver the ship from their possession and power, can there be a doubt, that it is a loss to be borne by the underwriters. without any inquiry, whether there be or be not a right, primary or secondary, to proceed in rem or in personam by those. whose money or goods have been applied or sacrificed. against the ship or the owner, for contribu-

tion? In truth, however, the loss by collision must be treated as a loss, giving an immediate title and remedy to the persons or property injured, from the time of the injury; and whether the amount be paid by the proceeds of the ship, or by the owner personally, it is still a loss occurring to the owner from the peril insured against, for which the underwriters are responsible to him.

And this leads me to add, that, in my judgment, it makes no difference, whether the ship was liable at all for the loss, if the loss was a peril insured against, and the owner was compellable to pay the loss, as happening by and in consequence of the peril. Unless the collision had taken place, the owner would have incurred no responsibility for any damages. It did take place, and he became chargeable therefor, and it was a peril insured against; how then can he say, that it was not a loss directly occasioned by and attaching to the peril? The case of Peters v. Warren Ins. Co. [supra], shows, that the collision was the proximate cause of the loss; and if the owner was thereby compellable to pay it, as well as the ship, the payment must be deemed an immediate charge on him, occasioned by the collision, just as much as upon the ship. The argument seems to suppose, that the insurance attaches only to the extent of the direct injury sustained by the very thing insured. But that argument is not well founded. Any and every expense, borne by and chargeable upon the owner of the thing insured, as a direct and immediate consequence of a peril insured against, is covered by the policy. There are many expenses incurred by the owner, in consequence of a peril insured against, which constitute no charge in rem; and yet the underwriters are bound to pay the same. Take for example, the fees of proctors and counsel, and officers of the court, paid under judicial proceedings in cases of capture; or the fees of notaries in making a protest; or the costs of a survey; or the duties and expenses, and charges paid in a port of necessity; or the expenses and charges of a sale of damaged goods, or of a sale of other goods, to enable the master to repair damage by a peril of the seas. These are all incidents to the original peril or loss; and they must be borne by the underwriters, although they constitute, strictly speaking, no lien in rem. The truth is, that in all these and the like cases we look to the origin of the loss. If it be a peril insured against, all the incidents attached thereto by law, as necessary or natural incidents, become a part of the loss; just as much as the storage of goods saved from a shipwreck is deemed a part of the loss; and the expenses of court, in a suit to ascertain the salvage, are also deemed a part of the loss.

Upon the whole, I see nothing to take the case out of the general rule fixed by the cases of Waters v. Columbia Ins. Co., 10 Pet. [35 U. S.] 507, and Peters v. Warren Ins. Co. 14 Pet. [39 U. S.] 99. The money, paid to the owners of the Ritchie, was a part of the loss occasioned to the owner of the Columbia by the collision, and a direct consequence thereof. I shall, therefore, affirm the decree of the district court.