GREAT WESTERN, The (WESTERN TRANSP. CO. v.).   See Case No. 17,443.

---

## Case No. 5,737.

GREAT WESTERN INS. CO. v. FOGARTY.

[See 19 Wall. (86 U. S.) 640.]

---

## Case No. 5,738.

GREAT WESTERN INS. CO. v. THWING.

[1 Lowell, 444.] [1]

Circuit Court, D. Massachusetts.   May Term, 1870.[2]

### INSURANCE—DUNNAGE—CARGO.

1. A warranty in a policy of insurance that the ship shall not load more than her registered tonnage, means that cargo shall not be carried beyond that amount.

[Cited in Thwing v. Great Western Ins. Co., 111 Mass. 108.]

2. Necessary and proper dunnage is no part of the loading within this warranty, though it is carried on freight.

[See note at end of case.]

Assumpsit to recover back money paid for a partial loss, under a policy of insurance, on the ship Alhambra. on a voyage from Liverpool to San Francisco. The policy contained a warranty that the ship should not

[1] [Reported by Hon. John Lowell, LL. D., District Judge, and here reprinted by permission.]

[2] [Reversed in 13 Wall. (80 U. S.) 672.]

"load more than her registered tonnage of lead, marble, coal, slate, copper, ore, salt, stone, bricks, grain, or iron, either or all, on any one passage." The ship took on board at Liverpool among other things, 1,064 tons of iron, 6 tons of brick, and 238 tons of cannel coal, making in all, 1,308 tons, and her register showed 1,285 tons, making an excess of twenty-three tons. There was evidence that the coal was used for dunnage; that cannel coal is suitable for dunnage, and is often used for that purpose in cargoes shipped at Liverpool; and that when so used it is liable to be crushed and otherwise injured; and when received for cargo it is usually stowed differently from dunnage. And on the other hand, there was evidence that the charterer of the ship made an agreement with the master, independent of his charter-party, to furnish this coal for dunnage, and to pay freight for it, and that it was put in the freight bill, and a bill of lading signed, and freight paid for it. The plaintiffs, when they paid the loss, were not aware of any breach of the warranty, and it was agreed that they could maintain their action if the loss was not covered by the policy. At the trial before Lowell, J., the plaintiffs asked the judge to rule that if freight was paid for this coal it came within the warranty, although used for dunnage. But the instruction given was, that if the article was in fact received as dunnage, and not as cargo, it would not be part of the loading within the meaning of the contract. The jury found for the defendant [William Thwing], and the plaintiffs now moved for a new trial.

M. E. Ingalls, for plaintiffs.
S. Bartlett and D. Thaxter, for defendant.

Before CLIFFORD, Circuit Justice, and LOWELL, District Judge.

LOWELL, District Judge. A warranty in a policy, like a condition in a deed, since it goes to defeat the general purpose of the contract, should be construed strictly. So construed, it seems to us, that the agreement was not to take cargo beyond the registered tonnage of the ship. It is argued that the purpose was to prevent the overloading of the vessel, and this is undoubtedly true; but the contract itself does not provide that no more than a certain weight shall be put on board the vessel, but only that the "loading" shall not exceed so much.

It is said that to load means to put or take on board for the purpose of carrying, and that the dunnage is and must be carried as far as the cargo is carried, and is, in fact, rather an incident to the cargo, than any part of the tackle, apparel, or furniture of the ship. We are not prepared to say that dunnage is not a part of the fittings of the ship to enable her to carry her cargo safely and properly. But if not, it does not follow that it is part of the cargo. The subject-matter

of this insurance is a ship expected to carry cargo; the stipulation has reference to cargo and enumerates articles which may probably be shipped as such; and it seems to us, construing this warranty strictly, though without any violence to the language, that it fairly means "if the cargo shall be iron, coal, grain, &c., either or all, she shall not take as such cargo more than the registered tonnage." Suppose there were no enumeration, but that the stipulation merely said, warranted not to load more than her registered tonnage, ought the usual and necessary dunnage, say of plank, wood, rattan, or mats, to be counted, though they might amount to a very considerable weight? Could passengers' luggage be within the warranty in such a case? Or take the case of a freighting steamer; the coal necessary for the use of her engines would not be estimated in ascertaining whether she had loaded iron, coal, stone, &c., beyond the agreed amount; and this because the warranty relates to a different subject, the cargo, and supposes the vessel to be duly fitted and prepared to receive her agreed cargo, before it begins to operate. It may be said that in such a case the coal-bunkers are no part of the registered capacity of the vessel; but I apprehend that the decision could not turn on the fact that the coal was or was not carried in the bunkers, or that more was carried than the bunkers would hold. If it was mixed up with the cargo, the result would be the same. So here, if iron, &c., were carried on deck or in the cabin, but carried as cargo, and not as stores or dunnage, the warranty would be broken.

If this be so, and if, as the jury have found, this cannel coal was·in truth used for dunnage, it does not seem material that freight was paid for it. The evidence shows that it was the subject of a special agreement, and was stowed in a way that cargo ought not to be stowed.

The fact that the article has a market value does not change its character and bring it within the language, when, if furnished by the ship, and of no great value, it would not be included. Perhaps nearly all dunnage has some value. The strongest mode of stating the argument for the plaintiff on this point is, that here, in fact, was a cargo that needed no dunnage, because a part of it would serve the purpose. But the facts seem rather to show that here was dunnage of intrinsic value, besides the cargo which the charterer had agreed to furnish; and which, without a special agreement, he could nor furnish, because it would be the right of the master to supply such dunnage as might be proper, at his own risk. When that had been supplied, by whomsoever it might be supplied, the ship was ready to receive her cargo. It occupied a space, and was put on board under a responsibility different from that of the loading, properly so called. This is rather a question of fact than of law, and

the jury have found, in effect, that this coal was used in good faith, and properly, as dunnage; and we are not ready to set aside the verdict on this point. Motion denied.

[NOTE. This case was reversed by the supreme court in an opinion by Mr. Justice Bradley—13 Wall. (80 U. S.) 672—upon the ground that no one had a right to import into the contract of insurance an implied qualification that a reasonable amount of merchandise proper for ballast or dunnage should not be reckoned as loading within the meaning of the contract. "When merchandise is used in lieu of dunnage, or to perform the office of dunnage, it does not lose its character as cargo, and the insurance company has the right to treat it as cargo. And it is evident that no form of words which the captain and the charterer might use on the subject can affect the rights of the insurance company. It would be res inter alios acta." Mr. Justice Clifford, Mr. Justice Swayne and Chief Justice Chase dissent.]