### AT THE

## NOVEMBER SESSION 1872, IN BOSTON.

PRESENT:

Hon. REUBEN A. CHAPMAN, Chief Justice.
Hon. HORACE GRAY, Jr.,
Hon. JOHN WELLS,
Hon. JAMES D. COLT,       } Justices.
Hon. SETH AMES,
Hon. MARCUS MORTON,

## SUFFOLK COUNTY.

WILLIAM THWING *vs.* GREAT WESTERN INSURANCE COMPANY.
GREAT WESTERN INSURANCE COMPANY *vs.* WILLIAM THWING.

If a policy of insurance issued by a company in New York and signed by their president and secretary there, is delivered to and accepted by the assured in Boston, and the assured gives the premium note in Boston, the policy is to be interpreted by the law of this Commonwealth, although at the time of issuing it the company has no general agent in the Commonwealth appointed, in accordance with the Gen. Sts. c. 58, § 68, to receive service of process; and therefore the policy covers the amount paid by the insured vessel to another vessel for damages caused by their collision; and evidence of a general usage or understanding in New York or Boston is not admissible to control such interpretation.

An insured vessel was held liable in a suit in a foreign court of admiralty for damages to another vessel with whom she had come into collision; the question was litigated in good

faith, and after the decree of the court, the amount of the damages was fairly agreed upon and adjusted by the owners of the two vessels. *Held*, that the insurers were liable for this amount, although they had no notice of the suit.

A policy of insurance on a vessel provided that the sum insured should be payable thirty days after proof of loss. In an action on this policy, the declaration, filed in April 1868, claimed to recover, first, for the amount which the insured vessel had to pay to another vessel with which she had come into collision, and secondly, for a general average contribution, and the answer put both these claims in issue. No notice or proof of loss under the first claim was made before the commencement of the action. In August 1869 an agreement of parties was filed that the plaintiff had sustained loss; that the only question for the jury should be on an alleged misrepresentation and breach of warranty by the plaintiff as to loading; and that if the plaintiff had a verdict, the case should be sent to an assessor to determine the damages. In September 1869 a trial was had, the verdict was for the plaintiff, exceptions were alleged and overruled, and in July 1871 the case was sent to an assessor. The defendants then moved to set aside the agreement; and filed a bill in equity to reform the policy on the ground that it was not intended that the plaintiff's first claim should be covered by the policy; that the plaintiff had never made proof of loss under this claim; and that owing to the laches of their counsel they had only just discovered that the plaintiff made such claim. *Held*, that the motion should be overruled and the bill in equity dismissed.

In an action on a policy of insurance to recover the amount paid by the insured vessel as damages for injuring another vessel with which she had come into collision, interest can be recovered only from the date of the writ, if no notice was given to the insurers before the beginning of the action.

THE FIRST of these cases was an action of contract, brought by William Thwing, upon a policy of insurance, by which the Great Western Insurance Company, in consideration of a premium of $700, insured him $20,000, payable in thirty days after proof of loss and proof of interest, on his ship Alhambra, valued at $75,000, on a voyage from Liverpool to San Francisco, against the perils of the sea, collisions and all other perils, and which contained the following clauses :

" In case of any loss or misfortune, it shall be lawful and necessary to and for the assured, factors, servants, and assigns, to sue, labor, and travel for, in and about the defence, safeguard, and recovery of the said vessel, or any part thereof, without prejudice to this insurance ; to the charges whereof the said insurance company will contribute according to the rate and quantity of the sum herein insured." " Provided always, and it is hereby further agreed, that if the said assured shall have made any other assurance upon the premises aforesaid, prior in date to this policy, then the said Great Western Insurance Company shall be answerable only for so much as the amount of such prior assurance may be

deficient towards fully covering the premises hereby assured; and the said Great Western Insurance Company shall return the premium upon so much of the sum by them assured as they shall be by such prior assurance exonerated from. And in case of any insurance upon the said premises, subsequent in date to this policy, the said Great Western Insurance Company shall nevertheless be answerable for the full extent of the sum by them subscribed hereto, without right to claim contribution from such subsequent assurers, and shall accordingly be entitled to retain the premium by them received in the same manner as if no such subsequent assurance had been made." " Warranted not to load more than her registered tonnage with lead, marble, coal, slate, copper ore, salt, stone, bricks, grain or iron, either or all, on any one passage, and not to carry guano or lime." The policy ended thus : " In witness whereof the president or vice president of the said Great Western Insurance Company hath hereunto subscribed his name, and the sum insured, and caused the same to be attested by its secretary in New York, the sixth day of October, one thousand eight hundred and sixty-three. $20,000. Twenty thousand dollars. James F. Cox, Vice President. J. Caiglier Johnson, Senior Secretary."

The declaration, filed April 7, 1868, contained two counts, the first of which alleged the making of the policy, (a copy of which was annexed,) and that the ship Alhambra, while proceeding on the voyage insured, " collided with the ship Alkera, whereby the plaintiff sustained a loss and was obliged to and did pay the owners of said ship Alkera for damages sustained by said last named ship in consequence of said collision, the officers in charge of said ship Alhambra being decided to be in fault, the sum of $24,749.60, and the defendants had notice of said loss and payment, and were bound by the terms of said policy to pay their share of said payment, based upon a valuation of $75,000, to wit : the sum of $6599.89, within thirty days after such notice," and owed the plaintiff said sum.

The second count, after setting out the suing and laboring clause of the policy, alleged " that while proceeding on said voyage said ship was by the perils of the seas damaged in her hull,

rigging and appurtenances, and it was necessary, for the preservation of said ship and her cargo, for said ship to go to a port of distress, and to have said cargo discharged and said ship and her rigging and appurtenances repaired and said cargo reloaded, and the plaintiff was obliged to expend $17,109.38 as a general average contribution in consequence of said loss, and the defendants had notice of said loss and expenditure, and were bound by the terms of said policy to pay their share thereof, to wit, the sum of $4562.50 within thirty days after such notice," and owed the plaintiff said sum.

The defendants, in their answer, admitted the making of the policy, denied " that the plaintiff suffered any loss by reason of a collision with the ship Alkera, which the defendants are liable for by the terms and conditions of said policy ; that the collision with said vessel occurred through the fault of the officers in charge of the said ship Alhambra as alleged ; that the said vessel Alkera was damaged to the amount alleged ; that the defendants received notice of said loss and said payment as alleged," and all the other allegations of the declaration ; set up the warranty printed above; alleged a breach thereof by loading the Alhambra on one passage more than her registered tonnage with iron, coal and bricks ; and alleged a fraudulent misrepresentation as to her tonnage in the application for insurance.

· On August 7, 1869, the counsel of the parties signed and filed this agreement : " At the trial of this cause it is agreed that the plaintiff sustained loss, and if the verdict should be in his favor, the cause is to be sent to John S. Tyler, to assess the amount of the damage ; the only questions to be tried by the jury are, Whether the ship was overloaded under the warranty in the policy in regard to the lading, among other things, of iron, coal and brick ; and whether there was a misrepresentation as to her tonnage in obtaining the policy of insurance. The freight list and ship's register may be used by either party without formal proof."

A trial was had in this court in September 1869, and resulted in a verdict for the plaintiff, and the defendants alleged exceptions, which were overruled by the full court, 103 Mass. 401 ; and

on July 11, 1871, an order was made appointing Tyler to assess the damages and make a report thereof to the court.

The defendants on September 13, 1871, moved the court to vacate the agreement above given, or else " to so reform the same that there shall be no question, by reason of any language therein, of the right of the defendants to contest the claim of the plaintiff to recover for damages paid by the plaintiff for injury done by the Alhambra to the Alkera, set forth in the first count of the declaration."

The *second* of these cases was a bill in equity, filed October 27, 1871, by the Great Western Insurance Company against Thwing, alleging that in " October 1863, the company were, and long had been largely engaged in the business of marine insurance at the city of New York, insuring vessels in various parts of the world ; that they had no agent authorized to bind them by any contract in Boston, and no domicil or place of business and no attachable property in Massachusetts ; that no person in Massachusetts was authorized to accept service of any judicial process upon them in Massachusetts, and they were not justiciable in Massachusetts ; that at that time it was settled law in the State of New York, that, where a policy of insurance was made against perils of the seas and collisions, the insurers were not liable to indemnify the insured for compensation he might be compelled to make to the owners of any other vessel for injury done to such vessel by collision, by reason of the negligence, unskilfulness, or other fault of the master or crew of the insured vessel, not involving barratry, or for any lien which might attach to the insured vessel by reason of the aforesaid causes ; that the same was the settled law as administered by all the courts of the federal government of the United States, and in Great Britain and her colonies, and, as the company are instructed, by all the courts of the several states of the United States which have been called upon to administer the same, unless in the State of Massachusetts ; and that parties to a policy of insurance in the above named form did not expect to make or receive such indemnification, wherever the said contract was made, or performable ; " that in October 1863, Thwing, being the owner of the ship Alhambra, then at

Liverpool, and bound on a voyage to San Francisco, made appli-
cation to the company to insure him $20,000, on said ship valued
at $75,000, for said voyage ; that they executed and delivered to
him the policy declared on ; that he knew at the time " the set-
tled law and usage and practice above described respecting the
insuring of a vessel against the secondary loss arising through col-
lision, as above described, and that the company did not insure
against said secondary loss unless by special agreement, upon a
special premium, and with an express statement of the risk in
their policies ; " and that he accepted the policy intending thereby
to receive insurance against damage to the Alhambra by collision
and not against the said secondary risk.

The bill further alleged " that the Alhambra sailed from Liver-
pool on October 9, 1863, and while on the high seas suffered dam-
age by heavy weather, and on October 13 put back to Liverpool,
was repaired and sailed again on December 15, 1863 ; that for
this damage at sea Thwing had a claim against the company for
direct partial loss to the Alhambra, ascertainable at Liverpool,
and for her general average loss, which was to be ascertained and
adjusted on her arrival at San Francisco ; that on December 16,
while in the River Mersey, the Alhambra came into collision with
two or more vessels, suffered further damage to her hull and rig-
ging, was detained at Liverpool, underwent repairs and sailed
again in January 1864 ; that on April 19, 1864, Thwing gave
notice and proof to the company of the damage to the Alhambra in
October and in December aforesaid, claimed a partial loss for all
the damage done to her in the sum of $4221.16, and gave notice to
the company for the general average loss arising out of the said
damages, to be ascertained on the arrival of the Alhambra in San
Francisco ; that on May 6, 1864, within the thirty days allowed
by the policy, the company paid Thwing said sum of $4221.16 ;
that on July 18, 1865, Thwing gave notice and proof to the com-
pany of said general average loss which had been adjusted at San
Francisco, in the sum of $4562.50 ; " that while examining the
adjustment, the company discovered, for the first time, that there
had been, on the part of Thwing, a breach of a warranty in the
policy and a misrepresentation of the registered tonnage of the

vessel, and that the Alhambra was loaded with an amount of iron, coal and bricks, greater than her registered tonnage ; that thereupon they gave notice to Thwing that they considered that the policy had never attached, or had become void by reason of said breach of warranty and misrepresentation, and refused to pay the general average loss, and demanded of him the repayment to them of the said sum of $4221.16 ; and, Thwing refusing to repay the same, they commenced on November 20, 1867, an action against him to recover it in the Circuit Court of the United States for the District of Massachusetts ; that the action was contested, and the company employed as their counsel Melville E. Ingalls, Esquire, of Boston, who was duly instructed on the subject of the breach of warranty and misrepresentation, and said action was pending before the Supreme Court of the United States, on a writ of error ; that after the payment of the partial loss to Thwing, the company, in conformity with the statutes of this Commonwealth, appointed an agent, upon whom judicial process might be served in suits against them in this Commonwealth ; that on March 20, 1868, Thwing commenced an action against the company, in this court, upon the policy, serving process upon the said agent ; and that the company employed Ingalls as their counsel.

The bill then set forth the proceedings in the action at law as above stated ; alleged that the company, not knowing that Thwing had or pretended to have any claim against them, except the above named claim for general average, instructed their counsel to set up the defence of breach of warranty and misrepresentation ; that they understood that these were the only questions of law involved in the suit ; that they therefore authorized their counsel to consent to the agreement above set forth as to the questions to be submitted to the jury ; that about two weeks after the decision of this court in July 1871, overruling the exceptions in that suit, and when the business of settling the amount to be paid came up, the company for the first time learned that in Thwing's declaration there was, in addition to the claim for general average, a demand in which Thwing claimed of the company payment of their proportion of the amount paid by him to the

owners of the Alkera; that on inquiry, said Ingalls informed them "that being first instructed by them and their counsel in New York on the points of said breach of warranty and misrepresentation, as the only questions in dispute, and those being the only points involved in the suit first brought, namely, in the Circuit Court, his attention had been confined to them; that when Thwing's suit was brought, being still instructed by the company and their counsel in New York to set up the said defences of breach of warranty and misrepresentation, and no other defence being suggested to him, he naturally confined his attention to those defences; that the agreement which he made with the counsel of Thwing, to submit only those questions to the jury, tended to confine his attention to those questions, and to withdraw it from any careful examination of Thwing's demand; that it was not at any time in fact present to his mind that Thwing made any claim for the said secondary loss, although, when the subject came up in July 1871, and his attention was then called to it, he saw that such a claim was set forth in the declaration, and was noticed in the answer filed thereto in behalf of the company which he probably drew up, or caused to be drawn up and filed; but that the answer was a formal answer, only denying knowledge in the usual manner in such cases, treating both of said claims together, and drawn rather as a matter of form, and without conference with the company or their counsel in New York; said Ingalls supposing all the while that there was no demand of Thwing in dispute, but only the defences of the company;" that if they had known, either before Thwing brought his suit or afterwards, that he made any claim for any such secondary loss, they would have resisted the same, and would have removed said suit to the Circuit Court of the United States, and if their counsel had known that there was any dispute as to the claim of Thwing, he would in like manner have removed said suit; "that said Thwing never did make to them the notice and proof of said secondary loss, as required by the policy, and is therefore not entitled to recover the same by any action at law; and did never inform them of the pendency of the suit or claim against him, or the ship Alhambra therefor; and that they are

informed that the counsel for Thwing contend that the defence of want of notice and proof is not now open to the company by reason of the agreement or stipulation above named, made between them and the counsel for the company, which agreement was made by their counsel under a misapprehension as to the state of the facts."

The bill then alleged " that if said Thwing is permitted to proceed to judgment on his said suit upon said policy as it now stands, there is danger that he will obtain judgment against the company for said secondary loss; that the company will have no plain, adequate and complete remedy or relief against the same at common law, and unless this court shall afford to them the same in equity; that even if the final judgment of this court at common law should be against said Thwing, as to the said secondary loss, yet the same could not be obtained by the company without great, unnecessary and onerous litigation, to which said Thwing ought not in conscience and equity to compel the company; that said Thwing well knew that the contract between him and the company did not in fact include such secondary loss, and that the said policy, as it stands, would not be construed to include the same by any tribunal by which the company were justiciable when the contract was made, or when the said losses occurred or were payable, or during the term covered by the said policy, and did not apply for or pay for or expect to receive indemnity from the company for any such loss; but that after the difference arose between him and the company respecting the breach of warranty, and he had determined to proceed against the company for the general average loss, and the company had become justiciable in Massachusetts, by reason of the appointment of a statute agent, as aforesaid, said Thwing included in his demand, in the suit brought in this court, the claim of the said secondary loss, without giving notice and proof thereof, as required by the policy, in the belief that this court, at common law, would feel obliged, by reason of the precedent aforesaid, to construe said policy, as it stands, as covering said secondary loss, thereby fraudulently intending and contriving to obtain a judgment against the company for said secondary loss, to which in

justice and equity he had no claim; and that if, when the said contract was made, said Thwing did intend to obtain from the company a policy which could, under any circumstances, or by any tribunal before which the same could be brought, be construed to cover such secondary loss, he fraudulently concealed such intent from them, and well knew that they understood that his purpose was the same as their purpose, namely, not to embrace such secondary risk in the contract, and well knew that they fixed the premium in the belief that such secondary risk was not included, and well knew that they made the policy and delivered the same and accepted the premium in the belief that said secondary risk was not intended to be included by either party and was not included."

The prayer was " that said policy may be so reformed as to exclude in terms any claim thereunder for indemnity for loss by reason of any damage done by the insured vessel by negligence of persons in charge thereof to any other vessel, and that said Thwing be restrained by injunction from prosecuting to judgment or decree any claim or demand against the company under said policy, for indemnification for loss by reason of damage done by the ship Alhambra to any other vessel; and more especially his claim as set forth in his said suit for damage done by the ship Alhambra to the ship Alkéra," and for further relief.

Thwing, in his answer, alleged that the policy was effected and delivered to him in Boston; that he believed that it covered the risk called in the bill the secondary loss; that the company knew that he so believed; and that the policy did cover such secondary loss. He admitted that the statements in the bill as to the circumstances of the losses were correct; that on April 19, 1864, he gave notice and proof to the company of the damage to the Alhambra, and claimed a partial loss for all damage done to her as shown by such proof, but for none other, in the sum of $4221.16, and the company paid the same to him; and he alleged that at that time he did not believe that there was any valid claim against him or against the Alhambra in favor of the owners of any other vessel accruing out of said collision; and he admitted that he never gave the company notice of any suit on account of sa'd collision.

He further alleged that on July 19, 1865, he gave the company notice and proof of the general average loss, and claimed of them the amount thereof, to wit: $4562.50; that a few days afterwards they informed him that the policy was void for breach of warranty; that they should therefore refuse to pay the general average loss and should require him to pay back to them the partial loss already received by him as aforesaid; that "by reason of a decree of a competent court in England, having jurisdiction, he was obliged to pay and did pay to the owners of the ship Alkera, on account of said collision of the Alhambra with her, the sum of $24,749.60; that it was not until after the company had declared to him that the policy never attached and was void, and had refused to pay him said general average claim, and had demanded of him the return of the amount of partial loss so paid him as aforesaid, in consequence thereof, that he had received all the bills paid on account of said collision loss, and was thereby able to and did have his said loss by said collision stated by an insurance adjuster, and the amount thereof for which the company were liable made up and ascertained; and that he did not, when the amount of said collision for which the company were liable was so ascertained, present his said claim to them, because he believed that the same would be useless, as they had notified him as aforesaid that for the reason aforesaid, their policy never attached and was void, and that not merely would they not pay any further loss thereunder as aforesaid, but that they would require him to pay back what he had already received thereunder."

The answer then set forth the proceedings in the action at law in the Circuit Court of the United States and in this court, and alleged that the company knew of his said claim for collision before the bringing of the suit in this court; " that by the bringing of said suit, and the pleadings therein and negotiations leading to and the making of said agreement in regard to said trial, and the trial of the same, the company had full notice of said claim, and cannot now be allowed to allege ignorance thereof;" that the said agreement was not made under any misapprehension on the part of the company; and that the defence of want of notice and proof of said loss was not now open to them. The company filed a general replication.

The parties agreed that any evidence taken, either in the action at law or the bill in equity, might be used in both suits; that the assessor should make up the "amount of the general average and the amount of the partial or secondary loss, which latter making up shall be subject to the objections of said company, if it be open to them, (which is denied by said Thwing,) that said secondary loss is not by law covered by the policy; and subject to the further objection that if it be material, in the judgment of the court, to show that the sums paid by said Thwing, by reason of the decree of the court against the vessel, though adjusted between the parties, appeared in the decree of the court, so that the said Thwing cannot recover at all, unless he shows that the amount paid by him was pursuant to a decree of the court settling the amount, then it shall be open to him to make such proof;" that the motion to reform the agreement, together with the bill in equity, and the evidence in both suits, should be reported simultaneously with the finding of the assessor, for the determination of the whole court, and be argued together; and further, that as it appeared that "Thwing has recovered for losses on this voyage, including the so-called secondary loss, upon other policies from other underwriters, and the amounts cannot be well ascertained in season for this report, it is agreed that if that evidence may, in the opinion of the court, be material, it shall be open to proof."

The assessor reported that there was due to Thwing for general average loss $4562.50, with interest from August 12, 1865, and for said secondary loss $6599.89 with interest from "September 22, 1865, being thirty days after the payments of Thwing by reason of said collision had all been made up and stated, or from the date of the writ or such other period as the court shall determine."

The evidence taken in these cases tended to show that Thwing applied at the office in Boston of Nathaniel Foster, Jr., an insurance broker, for insurance in the company's office; that Foster was temporarily absent, but that John A. Parker, the vice president of the company, was there; that Thwing signed the usual application; that Parker put his initials to it; that the policy

was afterwards deliver^d to Thwing in Boston, and he gave his promissory note for the premium ; that this note was written by filling out one of the blank forms of notes which had been sent by the company to Foster, and on which "Boston" was printed as the place of making, and which purported to be given for "value received at Boston." Foster testified that he had been correspondent and agent of the company in Boston since 1858 ; that he had no power to make contracts, but forwarded applications to the company, and they returned the policies to him ; that he de livered the policies and collected the cash premiums and received the premium notes ; that he forwarded the notes and cash to the company and was paid for his commissions by checks ; that he generally paid losses and made no charge to the company therefor ; that the great bulk of his business in 1862 and 1863 was procuring policies from the company ; and that the company did not pay the rent of his office. Parker testified that he did not attach his initials to the application with the intention of entering into a contract with Thwing ; that he had no authority when away from New York to make contracts for the company ; and that Foster had then no relations with the company, but they received applications from him, as from other brokers. He also testified that before this application he had had a conversation with Thwing in New York in which he explained to him that the New York policies did not cover a secondary loss ; but Thwing, in his testimony, denied that there had been such a conversation.

There was much conflicting evidence on the general understanding and usage in New York and in Boston as to whether a policy of insurance in the form of the policy in these cases covered a secondary loss or not.

The company introduced evidence tending to show that in September 1864, Foster was appointed by them a general agent under the Gen. Sts. c. 58, § 68, to receive service of process ; and that before that time they had no agent in the Commonwealth who was authorized to receive service of process.

There was also evidence that the Alkera made a claim against the Alhambra for collision as early as January 1864 ; that she libelled the Alhambra in the High Court of Admiralty in Eng-

land ; that on June 15, 1864, a decree was rendered in favor of the Alkera ; that on June 18, Thwing's Liverpool agent wrote informing him that the decree had been rendered, but that the damages would not be assessed for about a month ; that Thwing received the letter in July ; that Thwing's Liverpool agent and the agent of the owners of the Alkera made a fair adjustment of the damage to the Alkera ; that a statement of the damage was sent to Thwing by his agent in a letter of June 10, 1865, and that the vouchers were sent to him by letter of August 26, 1865.

The officers of the company and their counsel in New York testified that they had no knowledge of the claim for the secondary loss till July 1871.

Melville M. Ingalls testified that he was retained as counsel for the company ; that he never heard from the company or any one connected therewith until July 1871, that Thwing had this claim for secondary loss against the company ; and that he had no recollection of anything being said between him and the counsel for Thwing or any one about the secondary loss before July 1871. He further testified : " The only two questions which I understood to be at issue in this case were misrepresentation of tonnage and breach of warranty. I must have known from the declaration that there was another claim for a loss by collision, but having received no instructions in regard to it, and being intent upon the defence of the case upon the two grounds I have mentioned, the matter of collision was never considered by me, excepting in the drawing of· my answer, in which I denied it more as a matter of form than anything else. I requested the counsel for Thwing to admit the freight list and ship's register. It was agreed that they should be admitted, provided I would agree that Tyler should assess the damage. In pursuance of this, and with the understanding of the defence in the case which I have stated I had, this stipulation was entered into. Except from the drawing of my answer to the declaration, I have no recollection that my attention was ever called to the claim for damage by the Alhambra to another vessel, until the summer of 1871. In fact, if I had not since seen the declaration and answer, and seen from

the two papers, which I know I read, that the matter of collision is stated there, I should say that the matter had never been brought to my attention, during my connection with the cases, previous to July 1871. I think I will add that the only explanation I can give of my not informing the company of the claim for collision, as set forth in the declaration, is, that I was trying the case under instructions from the attorney of the company in New York, and must have supposed that the office there knew all about the matter, and either had no defence, or did not care to defend."

There was evidence that Thwing recovered for losses on this voyage, including the secondary loss, upon other policies from other underwriters.

The cases were heard before *Ames*, J., who reported the suit in equity, and also the questions arising on the assessors' report and on the motion to reform the agreement, for the consideration of the full court.

*R. H. Dana, Jr.*, for the Great Western Insurance Company.

*S. Bartlett*, for Thwing.

GRAY, J. After a careful examination, in the light of the able arguments of counsel, of the voluminous record upon which these two cases have been submitted to us, we have not found it necessary to decide any question of fact upon which the testimony is conflicting, because we are of opinion that the principles of law already settled by the judgments of this court are decisive of the merits of the controversy.

The two principal legal questions at issue in the action at law were, 1st. Whether insurers of a vessel against perils of the sea, including collisions, are liable for the amount which the assured is compelled to pay for the injury done by a collision occasioned by fault of her master and mariners to another vessel; and 2d. Whether a warranty "not to load more than her registered tonnage with" either or all of certain articles, including coal, is broken by taking on board and carrying, (besides that amount of coal and other prohibited articles as cargo,) and receiving freight for, a quantity of coal as dunnage, found by the jury to be a suitable material, not more than was reasonably necessary, and actually and in good faith used, for that purpose.

Each of these questions has been decided, after full argument and much deliberation, by a unanimous judgment of this court, in accordance with a previous decision of the Circuit Court of the United States in this district, in favor of the assured. Upon each, the Supreme Court of the United States has since come to a different conclusion. With the greatest deference to the opinions of that court, and fully appreciating the inconvenience of conflicting rules in the state and federal courts upon questions of mercantile law, we are constrained by our sense of judicial duty to adhere to the original decisions.

Upon the second of these questions, on which the validity of the whole policy depends, the decision of this court was made in this very case, overruling exceptions to the ruling of a justice of this court at the trial, in harmony with the ruling made in the Circuit Court of the United States at the trial of an action brought by the insurers against the assured to recover back the amount of a partial loss paid under the same policy, and affirmed by the concurrent opinions of Mr. Justice Clifford and Judge Lowell after re-argument on a motion for a new trial. *Thwing* v. *Great Western Ins. Co.* 103 Mass. 401. *Great Western Ins. Co.* v. *Thwing*, 1 Lowell, 444. The judgment reported in 13 Wall. 672, by which the Supreme Court of the United States, by the opinion of five judges against three, reversed the ruling of the Circuit Court, appears to us, after that thorough and respectful consideration which the opinions of the highest judicial tribunal of the nation are entitled to receive, even upon a matter in which we are not bound by its adjudication, to be based upon the position that an article for which freight is paid cannot be received and used as dunnage, strictly so called ; and has not enabled us to divest ourselves of the opinion which we originally entertained, that that position depends upon a pure question of fact, of which we have no judicial knowledge, and which has been conclusively settled by the verdict of the jury.

Upon the other question, arising under the first count of the declaration, the decision made by this court more than twenty years ago in the case of *Nelson* v. *Suffolk Ins. Co.* 8 Cush. 477 following a decision of Mr. Justice Story in *Hale* v. *Washington*

*Ins. Co.* 2 Story, 176, has, notwithstanding the opposing decision soon afterwards made by the Supreme Court of the United States in *General Ins. Co.* v. *Sherwood*, 14 How. 351, been repeatedly affirmed by this court, as having settled the law of this Commonwealth, in view of which all contracts since made here, containing no new and controlling clauses upon the subject, must be deemed to have been entered into. *Walker* v. *Boston Ins. Co.* 14 Gray, 288. *Blanchard* v. *Equitable Safety Ins. Co.* 12 Allen, 386.

The policy executed by the Great Western Insurance Company, embodying and superseding the previous negotiations and agreements between the parties, was delivered and accepted, and the premium note signed by the assured, in Boston. The contract in suit was therefore made in Massachusetts, and must be governed by our law. *Heebner* v. *Eagle Ins. Co.* 10 Gray, 131.

The conflicting evidence of the general understanding or usage in New York or Boston cannot control the established legal construction of the written contract. *Eager* v. *Atlas Ins. Co.* 14 Pick. 141. *Seccomb* v. *Provincial Ins. Co.* 10 Allen, 305.

It is immaterial that the insurance company had not previously appointed such an agent as our statutes required, on whom process might be served in this Commonwealth. Before the appointment of such an agent, the assured, a citizen of Massachusetts, might have sued the company here, if he had found any of its attachable property within the jurisdiction. Such an agent was appointed long before this action was brought, and the company has answered and gone to trial on the merits. The possibility that it might have evaded our jurisdiction, if sued at an earlier period, cannot affect the legal interpretation and effect of the contract.

The question of the liability of the insured ship for the injury done to the other vessel by the collision was litigated in good faith by the assured in an English court of admiralty, and the amount of that injury, after an adverse decision of that court upon the general question, fairly adjusted between the agents of the owners of the two vessels, and paid by the assured according to that adjustment. Under these circumstances, the fact that the insurance company had no notice of, or opportunity to contest,

that suit, affords no ground for exempting them from liability for their proportion of the amount so paid. *Hale* v. *Washington Ins. Co.* 2 Story, 176. *Blanchard* v. *Equitable Safety Ins. Co.* 12 Allen, 386. *Swansey* v. *Chace*, 16 Gray, 303.

Nor can the insurance company be now permitted to avail itself of the want of formal notice and proof of this claim, in order to defeat a recovery. When an insurer, with knowledge of a claim made under a policy, rests his defence exclusively on other grounds, he is deemed to have waived all objections to the seasonableness and sufficiency of the notice and proofs of loss. *Martin* v. *Fishing Ins. Co.* 20 Pick. 389. *Vos* v. *Robinson*, 9 Johns. 192. *Tayloe* v. *Merchants' Ins. Co.* 9 How. 390. The declaration filed in April 1868 in the action at law was notice to the defendants that the plaintiff claimed to recover of them the amount paid by him for the injury to the other vessel by the collision. The answer of the defendants put that claim in issue. The agreement filed in the case in August 1869 for the trial of the principal questions by a jury or an assessor, without reserving any objection to the want of notice or proofs of any part of the loss claimed, was a waiver of all such objections.

The application on the law side of the court to set aside that agreement, and the bill in equity to reform the policy, were both filed more than three years after the insurance company had notice by the declaration of the nature and amount of the plaintiff's claims, more than two years after entering into the agreement in question, and after a trial by a jury of the issues submitted to them, argument and decision in the full court upon the exceptions taken at that trial, and subsequent reference of the case to an assessor, in accordance with that agreement. To grant the relief asked for, in either form, after such a delay, would be to reward inattention and laches at the expense of the party who had been duly vigilant in invoking the assistance of the court to secure his rights. *Ryder* v. *Phœnix Ins. Co.* 101 Mass. 548. *Paddock* v. *Commercial Ins. Co.* 104 Mass. 521. *Conant* v. *Perkins*, 107 Mass. 79.

The application to set aside the agreement filed in the action at law before the trial must therefore be denied, and the bill in equity dismissed, with costs.

Two minor questions, relating to the assessment of damages, remain to be considered.

The one is of the date from which interest shall be computed on the amount paid by the assured for the injury to the other vessel by the collision. No demand for payment of that claim appears to have been made upon, or notice of its existence given to, the insurance company before suing them upon the policy. They could not be in default for not paying it while they were ignorant of its existence. The interest thereon must therefore be computed from the date of the writ.

The other arises upon the last paragraph of the additional agreement of the parties, filed pending the proceedings before the assessor. The paragraph is not quite grammatical, but, fairly construed, it seems to us to reserve the right to either party to offer proof of the dates and amounts of other policies, if deemed by the court to be material. As, by the terms of the policy in suit, prior insurances are to be taken into consideration, and subsequent insurances are not, in computing the amount of this company's liability, proof of the amounts of such prior insurances might be material, and the case is,

*For this purpose only, recommitted to the assessor.*