GEORGE E. PACE, ADMINISTRATOR OF AUGUSTUS N. PACE, ET AL., APPELLANTS, VS. AUGUSTUS RAIFORD PACE, APPELLEE.

1. The statute requiring the next friend of an infant to give bond upon the institution of a suit relates exclusively to proceedings at common law. So much of the case of Sanderson's Administrator vs. Sanderson, 17 Fla., 829, holding otherwise, overruled.

2. In a suit in chancery by an infant through his next friend, the Chancellor has the power to adopt such measures as are necessary to fully protect the interest of the infant, and should exercise it when necessary.

3. A contract of life insurance describes the beneficiary thereunder as "for the benefit of the estate of the insured:" *Held,* That the beneficial interest under this contract, enured at the time of its execution and delivery to persons other than the assured, and that no interest passed to his assignee upon the party subsequently becoming a voluntary bankrupt.

4. A contract of life insurance of a foreign corporation, if executed and delivered in this State, must be construed by the laws of this State, and under the statute of this State, (Chap. 1864, Laws, McC.'s Dig., 534,) wherever the contract does not describe a person or persons, class or classes, in such terms as to show affirmatively that the beneficiaries are not the children, husband or wife of the assured, it enures to her or their benefit.

5. Where the description of the beneficiaries in a contract of life insurance is ambiguous, or if the terms used are applicable to several persons, or if the description is imperfect, extrinsic evidence may he resorted to to ascertain the meaning of the contract: *Held,* Under the circumstances in this case that the terms "for the benefit of the estate of the insured," referred to and meant for the benefit of an only minor child less than five years of age at the date of the contract, and not to the administrator or distributee of the estate, and that the property and the right to collect the proceeds of the policy enured to the child and not to the administrator of the assured.

6. The sureties upon the bond of an administrator who has collected moneys, neither assets of the estate, nor subject to distribution by him, and to which as the legal representative of the decedent

he was not entitled, are not liable for any appropriation or use of the same by the administrator for his personal benefit.

7. A court of equity has jurisdiction to call a guardian to an account at the suit of the ward, also to restrain any improper disposition of the fund, by its process to preserve it and in proper cases to remove the guardian. Such suit need not be instituted in the name of the Governor of the State.

8. To a suit against a guardian for an account, the sureties upon his bond are proper but not necessary parties. As they are interested in the taking of the account, they ought to be made parties, but the rule is not imperative that they must be.

Appeal from the Circuit Court for Duval county.
The facts of the case are stated in the opinion.

*F. F. L'Engle* and *M. C. Jordan* for Appellants.

Upon the first part of the first ground of the assignment of error, that is want of equity in the bill, it will appear by reference to the bill that all the assets or property of any kind alleged as having come to the possession of the administrator is the sum of $4,935 realized from the policy of insurance on the life of the decedent; that this policy was made "*for the benefit of the estate of the insured;*" that the infant claims that this sum belongs to him *exclusively;* that the creditors have no shadow of a right to parties to participate or share therein, and that the administrator resists payment to him upon the ground that the same should first be subjected to the payment of the demands and claims of the creditors of the deceased, having plainly been intended for such purpose by the decedent, when he at the time of the insurance being unmarried and having but one child, this infant, had the policy made payable *for the benefit of estate* of the insured.

It will be observed that there is no charge in the bill against the administrator except that he is diverting this sum to the claims of the creditors, a course he is *bound* to

pursue by virtue of the duties and obligations devolving upon him in his position as administrator; that although he is *vaguely* charged in said bill with wasting the assets of the estate; that the sole charge of waste consists in his action in favor of the creditors as aforesaid.

This charge, like the charge of fraud, ought not to be entertained by courts of equity as a basis for relief upon the mere allegation of such a fact; sufficient facts should be stated and sufficient statements made in the bill as will carry upon their face the existence of such a state of things as will warrant a court of equity in interfering with the administration of an estate under the supervision and control of the County Judge. Again, as the sureties are made parties to this bill, and they are only responsible for any breach of the administration bond, the bill showed upon its face such a condition of things as would enable the court to believe that there had been a breach of the bond. It is only in this event that they are liable.

The conditions of an admn. 'strator's bond are prescribed by law. McClellan's Digest, '.

Again, if the infant is not entitled to share in the proceeds of said policy until the demands of the creditors are first paid, would it not be necessary for him to show that the debts of the deceased have all been paid so far as proved, or that the administrator is derelict in not paying them, and that he has offered, or is ready and willing, to furnish bond or security for the refunding of any sum that may be necessary for the payment of any debts which may subsequently be proven against the estate, as required by the statute. McClellan's Digest, p. 84, Sec. 29; 17 Fla., 832, 833, Sanderson vs. L'Engle.

It follows, then, that as the infant claims the benefits of the policy to the exclusion of the creditors that this is the only bone of contention between him and the administra-

tor.  This right in this particular must depend upon the construction of section 22, page 534, McClellan's Digest:

" Whenever any person shall die in this State leaving insurance upon his or her life, the said insurance shall enure exclusively to the benefit of his or her child or children, husband or wife, in equal portions, or to any other person or persons, for whose use and benefit said insurance is declared in the policy ; and the proceeds thereof shall in no case be liable to attachment, garnishment or any legal process by any creditor or creditors of the person whose life was so insured, unless said policy declares that said insurance was effected for the benefit of such creditor or creditors."

It is plain that this law was only intended to save the person for whose benefit the insurance was effected all annoyance and expenses of legal proceedings by creditors of the insured, except those creditors for whose benefit it was obtained.   It is clear that the words " or to *any other person* or *persons for whose use or benefit said insurance is declared in said policy* " qualifies and explains the preceding part of the sentence, and that this language of the statute, with the language of the policy, show that it was not effected for the *exclusive* benefit of this infant.   If the deceased had so intended he would certainly have so declared in the policy, and the infant without such declaration gets no rights from the statute.

The intention of Pace, then, ought to be gathered from the language of the policy of insurance, if it be possible, and applied to the case upon the same principle governing the construction of wills.   It will thus be seen that it is a mere difference upon a question of law that the administrator has refused to pay this infant the sum of money alleged by him as enuring to his benefit exclusively.

In other words, what Pace meant when he had the

clause "for the benefit of estate" inserted in the policy is a question for a court of law to decide.

If a person dies intestate under the laws of the State his property or estate, after certain claims and debts are paid and the law otherwise complied with, goes to the creditors first and then to his heirs.

If this money is to become a part of his estate under the law, then we submit that it must be subjected to the payment of his debts.

And this brings us to the second part of the first ground of error. That is, that the complainant has a complete and adequate remedy at law. He not only has it before the County Judge under the statutes of this State, but also in the Circuit Court by a suit upon the bond of the administrator; so, also, as to the guardian.

The sureties on an administrator's bond must be sued at law. The remedy against them is not in equity. Teague vs. Dendy, 2 McCord's Chancery, 207 ; American Decisions, Vol. 15, p. 643.

As to the construction of similar statutes to this statute regarding the proceeds of life insurance, we would call the attention of the court to the decisions of the courts of Wisconsin, Tennessee, Illinois and Massachusetts, &c., commented on in May on Insurance, pp. 470, 483.

As to the second ground of error, to-wit: " That the suit should should be prosecuted in the name of the Governor of the State for the use of the infant, and that he is a necessary and proper party complainant," there can be no doubt under the conditions of the bond itself and under the provisions of the statute. McClellan's Digest, p. 95, Sec. 67 ; Ibid., p. 79, Sec. 11.

The same doctrine holds good as to the guardian's bond.

As to the third ground of error, to-wit: " That the sureties on the guardian's bond are necessary and proper par-

ties defendant," we cite in support thereof, without comment, the case of Pfeiffer & Sullivan vs. Knapp, 17 Fla., 144 to 146 ; Huntchcraft vs. Crouts' Heirs, 1 T. B. Monroe, 206 ; American Dec., Vol. 15, 100.

As to the fourth ground of error, to-wit : " That the assignee in bankruptcy, who is alleged in said bill as being the trustee for the creditors, and as receiving the moneys arising from its policy of insurance mentioned in said bill, is a necessary and proper party defendant thereto, but has not been made such," it is quite certain that the assignee is a necessary and proper party.

He is alleged in the bill to be the trustee of the creditors, and as having received, or is receiving for the creditors, the money in controversy, under the bankrupt law. Sec. 5090, Revised Statutes, as found in Bump's Bankruptcy, 9th Ed., 652.

If the debtor dies after the issuing of the warrant the proceedings may be continued and concluded in like manner as if he had lived. Ibid.

The word " proceedings " does not include a discharge unless there is a compliance with the requirements of Section 5113 in regard to the application for the discharge and the oath. Ibid.

No discharge can be granted where the debtor dies before these requirements are complied with. This clause must be taken as applying to such proceeding as may be taken by the assignee or other parties in settling the estate. In re. O'Farrell *et al.*, 2 B. R., 484 ; s. c. Ben., 191 ; s. c. 1 L. T. B., 159 ; In re. Quinike, 4 B. R., 92 ; s. c. 2 Biss., 354 ; Ibid.

If the policy was insured for the benefit of the estate of Pace, then it passed to his assignee for the benefit of the creditors, or to the administrator for their benefit, as the bankrupt may go into business after the adjudication of

bankruptcy, and acquire property and create new debts, subject to the contingency of getting his discharge. If he obtained no discharge his property remained liable for his debts. Under the bankrupt law all the property of the bankrupt passes to the assignee, except such property as was exempted by the Constitution and laws of this State as existing in the year 1871. See Section 5045, Revised Statutes of the United States, Bump on Bankruptcy, pp. 510–511.

The statute as to insurance was passed in 1872.

Consequently, even if the statute exempted this insurance from the claims of the creditors when Pace went into bankruptcy, this statute conflicted with the provisions of the Federal law, the bankrupt act, and therefore the insurance policy, and all benefits to be derived thereunder, would immediately vest in the assignee.

The following extracts from Bump on Bankruptcy, 484, show how broadly the Bankrupt Act covers the property of the bankrupt:

The words " all the estate, real and personal," are broad enough to cover every description of vested right and in interest attached to and growing out of property. Under such words the whole property of a testator would pass to his devisee. Comeggs vs. Vassee, 1 Pet., 193 ; s. c., 4 Wash., 570.

The language of the statute is sufficiently comprehensive to embrace the most minute and temporary interests in property. French vs. Carr, 7 Illinois, 664.

The assignment vests the property in the assignee, although it was not placed on the bankrupt schedules. Holbrook vs. Coney, 25 Ill., 543 ; Burton vs. Lockert, 9 Ark., 441 ; Jewett vs. Preston, 27 Maine, 400.

I think I have now shown to the court that any attempt to dispose of the proceeds of this policy of insurance with-

out making the assignee a party would be unjust to him, as it would certainly affect his rights, and therefore he is a necessary and proper party to complainant's bill.

I shall now again raise the question that was raised in the lower court, to-wit: That the failure of next friend to give the bond required by statute was a radical defect going to the jurisdiction of the court, and that even in the absence of any other ground the decree of the Circuit Court should be reversed with directions to dismiss the bill without prejudice, the defendant not responsible for this error, and the costs incurred by these subsequent proceedings. See Sanderson vs. L'Engle, 17 Fla.

*Cockrell & Walker* for Appellee.

MR. JUSTICE WESTCOTT delivered the opinion of the court:

The bill in this case is by Augustus Raiford Pace, an infant, through his next friend, Herman F. Damon, against George E. Pace, Henry Robinson and George R. Foster. He alleges that upon the death of his mother, leaving surviving her his father, Augustus N. Pace and himself, no administration of her estate was had, but that his father was appointed his guardian; that afterwards, on the 30th April, A. D. 1874, his father, then a resident of Duval county, obtained a policy of insurance, issued to him upon that day upon his (the father's) life, by the Alabama Gold Life Insurance Company, a corporation under the laws of Alabama, in the sum of $5,000, "for the benefit of the estate of the insured;" that said policy in no wise, in terms or by implication, declared that it was for the benefit of the creditors of the insured, or any of them; that on the 16th of August, 1878, his father was, upon his own petition, adjudged a bankrupt, and that his father died on the 29th of the same month, while a resident of Duval county, Florida,

intestate, leaving him, his only child and heir, surviving; that on the 25th of October, A. D. 1878, defendant, George E. Pace, was appointed by the Probate Court of Duval county administrator of his father's estate, and that the said Robinson and Foster are the sureties upon his administration bond; that the sum of $4,935.01 as such insurance was paid to said administrator on the 6th day of February, A. D. 1879; that on the 29th of April, A. D. 1879, the said George E. Pace was appointed guardian of the estate of your orator in the place of his deceased father, his said guardian giving bond in the sum of $500, with S. B. Hubbard and W. W. Bostwick as sureties; that the said George E. Pace claims that he is a creditor of the said decedent and his estate in a large sum; that the assets of the estate consist exclusively of the money realized from the insurance policy, and that from this sum the said George E. claims a right to payment; that the said administrator refuses to pay the said sum of money to your orator, and is wasting and misappropriating the same to the alleged claims of himself and others against Augustus N. Pace, or to the assignee in bankruptcy of said decedent in trust for said creditors to the said entire exclusion of your orator from any participation therein; that the said defendant, G. E. Pace, thus occupies inconsistent positions; that his appointment as guardian, under the circumstances, should not have been made, and this court should interpose for the protection of the estate and interest of your orator and remove the said George E. Pace from the office of guardian, and appoint some suitable person in his stead; that since the death of his father he has been supported and educated exclusively by his maternal grandfather and his maternal relatives. The prayer is that the said George E. Pace be removed from the office of guardian, and that he be made to account for all the assets which he has received or with

which he is chargeable; that said guardianship be finally closed; that the said Pace be required to settle his administration in this court; that the amount due your orator from said administrator be ascertained, and that the said administrator and his said sureties be decreed to pay the same; that in the event said distribution cannot be made at this time that the amount due your orator growing out of said insurance be ascertained, and that said administrator and said sureties on his official bond be decreed to pay the same, and that the sums so ascertained to be due as guardian and as administrator, be required to be paid into the registry of the court; that a guardian may be appointed for your orator, by or under the direction of this court, to take charge of his estate, after giving bond, and for general relief.

To this bill the defendants interposed a plea, setting up that the next friend of the infant had not given the bond required of him by the statute. McC.'s Dig., 812.

This plea was overruled, and this action of the court is set up as one of the grounds upon which the action of the court herein should be reversed.

The plea being overruled the defendants interposed a demurrer upon the following grounds:

First. There is no equity in the bill.

Second. That the suit should have been prosecuted in the name of the Governor of the State.

Third. That the sureties upon the guardian bond are necessary parties.

Fourth. That the assignee in bankruptcy is a necessary party.

This demurrer was overruled and defendants appealed.

The ruling upon the plea is the first ground of reversal sought to be sustained here.

The language of this court in the case of Sanderson's Administrators vs. Sanderson, wherein I for the court de-

livered the opinion, justifies the point made by the appellant. That being a chancery case, however, it was an error. An examination of the act in the statutes of the Territory, p. 34 acts of 1828, shows clearly that this section (McC.'s Dig., 812, Sec. 7,) relates exclusively to proceedings at common law. Neither the statutes regulating chancery proceedings nor the rules of practice in chancery require such a bond. The Chancellor, however, should adopt such measures as are necessary to fully and completely protect the interest of the infant.

We examine next the question whether the assignee is a necessary party here, and that depends upon whether he has any interest in the subject-matter of the suit.

Before the death of the assured here, which was on the 29th of August, A. D. 1878, and on the 16th of August, A. D. 1878, the assured was adjudged a bankrupt upon his own petition.

The assured having been adjudged a bankrupt, and this policy being for the benefit of his estate, we do not see how any interest vested in the assignee under the allegations in the bill. The rule is that the assignee takes the interest of the bankrupt subject to all legal and equitable claims of others, and "in general the assignee does not stand in a better predicament than the bankrupt himself and can claim only what the latter might claim." The bankrupt himself here could not during his lifetime claim anything, and at his death a right of action against the insurer enured to the benefit of the beneficiaries by virtue of the rights conferred by the original contract of insurance.

The assignee in bankruptcy was not, during the lifetime of the decedent, entitled to the money.

A life policy is a contract in which the insured " agrees to pay a given sum upon the happening of a particular event contingent upon the duration of human life in con-

sideration of the immediate payment of a smaller sum or certain equivalent periodical payments by another. The beneficiary under it has a valuable interest, and while the authorities upon the subject are not to be reconciled, still the doctrine that with the execution and delivery of the contract the beneficiary's interest becomes vested and passes beyond the control of the assured, must be considered as supported by the great weight of authority."

The beneficiary here certainly was not the assured. Again, under the bankrupt law such property as was the bankrupt's at the time of the filing of the petition in bankruptcy and no other vests in the assignee. The bankrupt is *civiliter mortuus* only as to his old property and contracts. His assignee stands like an administrator in respect to these. It is thus apparent that the assignee, under the allegations of this bill, had no title to this property, either at the date of the filing of the petition in bankruptcy or at the date of the death of the assured. The proceeds of this policy were therefore not subject to the jurisdiction of the Federal courts so far as the operation of the bankrupt act was concerned. Who paid the premiums, or when they were paid, does not appear, and therefore nothing dependent upon such facts is determined here.

The assignee having no interest he was therefore not a necessary party, if, indeed, any assignee was appointed, a matter as to which the bill is silent. The case made by the bill as to the matter of bankruptcy is that of a person *civiliter mortuus* as to the property owned at the filing of the petition with no one to represent him as to it, like the property which belonged to a dead man with no administrator or other legal representative appointed. The matter, however, has been argued in the light in which we have treated it, and for that reason, and on account of the character of the conclusion we reach, we decide it in that aspect.

29

It is thus apparent that if the creditors of the decedent here are entitled to this money, it is not the result of any operation of the bankrupt act.

The next question we examine is what is the nature of the liability of Pace to the plaintiff for the funds alleged to be in his hands at the filing of the bill in this case? It is evident that he cannot be liable in two distinct and different capacities for the same fund to the same party in two distinct and different relations. He cannot be liable as administrator to the plaintiff as distributee and at the same time liable as guardian to the plaintiff as ward. This proposition we think self-evident. If he is liable as administrator, then it is because he does not hold these funds as guardian, but as administrator; and if he is liable as guardian, then it is because the relation of administrator and distributee, if it ever existed as to this fund, has ceased to exist, and the new and different relation of guardian and ward has come into existence.

The subject out of which this suit arises is the contract of insurance made by the Alabama Gold Life Insurance Company. The facts alleged in the bill, we think, show that such contract was finally executed and delivered in this State. The allegation is that on the 30th of April, 1874, the said Augustus N. Pace, then a resident of Duval county, obtained the policy issued to him on that day by the Alabama Gold Life Insurance Company, a corporation organized under the laws of Alabama. This being so, the law of this State is to govern its construction and interpretation without any reference to the law of the domicil of the corporation liable upon it. Kennebec Co. vs. Augusta Insurance and Banking Co., 6 Gray, 208; Heebner vs. Eagle Insurance Co. of Cincinnati, 10 Gray, 143; Thwing vs. Great Western Insurance Company, 111 Mass., 109.

There is no judicial decision in this State defining the

law in reference to a policy of this character. There is and was, however, a statute in reference to the subject in force at the time this contract was entered into. It provided " that whenever any person shall die in this State having insurance upon his or her life, the said insurance shall enure exclusively to the benefit of his or her child or children, husband or wife, in equal portions, or to any other person or persons for whose use and benefit said insurance is declared in the policy, and the proceeds thereof shall in no case be liable to attachment, garnishment or any legal process, by any creditor or creditors of the person whose life was so insured, unless said policy declares that said insurance was effected for the benefit of such creditor or creditors." To allow participation in the proceeds of the policy, by any person other than the children, husband or wife of the assured, the policy must in terms states that it was for some other person, creditor or creditors. The language of the policy may not, perhaps, be required to name individuals, but it must at least describe the person or persons, class or classes, to take in such terms as show affirmatively that the beneficiaries of a general policy are not the children, husband or wife of the assured. There can be no exclusion of these parties unless the purpose to exclude them is manifest and without doubt, and the purpose must appear as we have stated. Under this statute and under this policy unquestionably upon the death of the assured no creditor had a right to participate in the proceeds of this policy. It enured exclusively to the benefit of his child surviving him, the plaintiff in this cause, and even if the contract was with the assured, his executors, administrators and assigns, (as to which the bill is silent,) the administrator would not hold it as general assets in his hands, liable to the payment of debts or to distribution according to the law of the domicil of the intestate. He would hold it as

trustee, coupled with the single duty of payment. Knick-erbocker Life Insurance Company vs. Weitz *et al.*, 99 Mass., 157.

But did the defendant, Pace, here ever have any title as administrator. The contract does not appear to have been made with him as such. It was made with the assured, and the terms designating the beneficiary or beneficiaries by the parties to the contract are " for the benefit of the estate of the insured." This language must be given such meaning as conforms to the intention of the parties, and this intention must be determined by the acts of the parties and the surrounding circumstances.

In the case of Clinton vs. The Hope Insurance Company, 45 New York, 461, the designation of the beneficiaries was " the estate of Daniel Ross." The Court of Appeals, in giving the rule to determine the effect of these terms, says : " If the name of the person for whose benefit the insurance is obtained does not appear upon the face of the policy, or if the designations used are applicable to several persons, or if the description of the assured is imperfect or ambiguous so that it cannot be understood without explanation, extrinsic evidence may be resorted to to ascertain the meaning of the contract; and when thus ascertained it will be held to apply to the interests intended to be covered by it, and they will be deemed to be comprehended within it who were in the mind of the parties when the contract was made." May on Ins., 2d Ed., §91, 445, and cases there cited.

There is nothing in this bill to show the existence of a creditor of Pace at the date of the contract. It does ap-pear that he had an only child, the plaintiff, then not five years of age. The term estate here in its strict legal sig-nification embraces neither the administrator, the heir or the creditor of the assured. It means the effects, personal

and real, left by the decedent, when given a signification with reference to a period subsequent to his death, and that is the date when the benefit was to accrue. Such literal legal signification would be absurd. The word benefit in a policy of insurance must be interpreted with reference to persons, not things. An insurance may be for the benefit of the person owning a house, not for the house. To benefit stocks and stores was not the intention of the parties. Without entering into any elaborate discussion of the subject we will simply state that the cases having a bearing upon the subject (Myers vs. John Hancock Ins. Co., 41 Mo., 538; Clinton vs. Hope Insurance Co., 45 N. Y., 454; Globe Insurance Company vs. Boyle, 21 Ohio State, 119,) shows that these and similar terms, under the circumstances of this case, are so interpreted as to benefit the surviving members of the family rather than for the benefit of the creditor or administrator, and that in this instance the beneficiary intended was the infant child. In the interpretation of contracts of this character the courts go a great way in this direction. This, we think, would have been the construction of this policy independent of the policy of the statute, which, as a matter of course, should have some effect in controlling our action in the matter.

With this construction of the policy the necessary result is that upon the death of the assured the child became entitled to its proceeds, had title thereto, and that the administrator, the legal representative, had no title, and was in no way entitled to possession or control thereof.

The infant, therefore, does not here claim as heir or distributee. His claim is like that which a stranger would make if he were the beneficiary. The necessary result of this is that the sureties of the administrator are not responsible for the management of this fund by Pace. The fact that he did, as administrator, receipt for the property of the

child cannot bind his sureties. The sureties upon the bond of an administrator who has collected moneys, neither assets of the estate nor subject to distribution by him, and to which, as the legal representative of the decedent, he was not entitled, are not liable for any appropriation or use of the same by the administrator for his personal benefit. Hodges' Appeal, 9 Ins. Law Journal, 769; Miller's Appeal, 48 Penn. State, 391; Reeves vs. Steele, 2 Head, 649; Gregg vs. Currier, 36 N. H., 200.

But the plaintiff alleges that the defendant, who is now in posession of these funds, was appointed his guardian, and unquestionably he is liable in equity to account to him therefor. In this aspect of the case are the guardian's sureties necessary parties to this proceeding? This court, in the case of Henry *et ux.* vs. Clardy, 8 Fla., 82, which was a case of a bill by ward against guardian and sureties, remark: "That in cases of this character the surety ought always to be made a party to the taking of the account." If the court meant by this language that the surety not only *ought* to be made a party, but that he *must* be made a party, then such doctrine is not sustained by the authorities. We think with the court in that case that he ought to be made a party, because he is bound by the account by virtue of the general nature of his contract, and of the privity of contract between him and his principal, but the rule from the cases is that he is a proper but not a necessary party. Hailey vs. Boyd's Administrator, 64 Ala., 400; Payne vs. Hook, 7 Wall., 425; Pfeiffer and Sullivan vs. Knapp, 17 Fla., 146; Pratt vs. Wright, 13 Gratt., 181.

As to the objection that the suit should be instituted in the name of the Governor, we simply say that the right of the infant is not limited to an action upon the bond of the guardian in the name of the Governor. Chancery has jurisdiction to have an account to restrain any improper disposi-

tion of the fund, by its process to preserve it, and for final decree, and in proper cases to remove the guardian.

The necessary result of these views is that the judgment overruling the demurrer is affirmed.