WILLIS N. BRITTON, Respondent, *v.* CHARLES J. FERRIN, JR., et al., Appellants.

1. PRINCIPAL AND AGENT — RELATION BETWEEN FACTOR AND PRINCIPAL IS FIDUCIARY. The relation between a commission agent or factor for the sale of goods and his principal is fiduciary, and in the absence of an express agreement or one implied from the course of business or dealing between the parties, giving to the former the right to appropriate to his own use the proceeds of sale, they belong to the principal, subject only to the lien of the agent for commissions and other advances and charges, and the principal may follow and reclaim them so long as their identity is not lost, subject to the rights of a *bona fide* purchaser for value.

2. WHEN REFUSAL TO PAY OVER PROCEEDS OF SALES CONSTITUTES CONVERSION — WHEN PRINCIPAL'S DEBT TO THIRD PERSON CANNOT BE

COUNTERCLAIMED IN ACTION THEREFOR. Where, under such circumstances, factors upon a seasonable demand refuse to surrender such proceeds, they will not be permitted in an action by the principal, to defeat or diminish a recovery therefor by purchasing the claim of a third person against him and interposing it as a counterclaim, for two reasons: 1. The action is under section 549 of the Code of Civil Procedure one of tort, and secures to the plaintiff the same rights and remedies that exist as to other wrongs of a similar character. 2. The attempt to enforce such counterclaim is an effort to deal with the funds of the principal for their own benefit, and thereby defendants assume a position incompatible with their duties, adverse and antagonistic to his rights, and which are in direct conflict with his interest.

*Britton* v. *Ferrin*, 57 App. Div. 622, affirmed.

(Argued April 8, 1902; decided May 13, 1902.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered December 28, 1900, affirming a judgment in favor of plaintiff entered upon a verdict directed by the court and an order denying a motion for a new trial.

The plaintiff alleged in his complaint that he delivered to the defendants, who were commission merchants in the city of Buffalo, two carloads of apples and a carload of apples and onions, which were the property of the plaintiff, and employed the defendants to sell the same upon commission; that they were sold by the defendants for the aggregate sum of $999.35, and they received that sum for the plaintiff in a fiduciary capacity; that the charges amounted to $256.63, leaving a balance of $742.72, which the plaintiff demanded of the defendants, which they wrongfully refused to pay and wrongfully converted to their own use.

The defendants admitted that they were copartners; that the plaintiff consigned the goods mentioned; that they were sold by the defendants for prices aggregating the sum alleged; that their charges were the amount stated, and that before the commencement of the action the plaintiff had demanded payment of the sum of $742.72. The other allegations of the complaint were denied.

The defendants then specially alleged that they did not receive the proceeds of such sales in a fiduciary capacity, and

that the plaintiff never demanded or was entitled to the identical proceeds thereof. They then alleged that there was a general custom and course of dealing among commission merchants throughout the country and at Buffalo, which was well known to the plaintiff; that their relation was that of debtor and creditor, and that such was the custom and course of dealing and contract between the parties; that they subsequently sent to the plaintiff an account of the various sales made by them, showing the gross proceeds, expenses and commissions, and the net proceeds of each car, and that the plaintiff accepted their personal credit therefor; that before the commencement of the action the plaintiff accepted the defendants' agreement to pay such proceeds as an ordinary debt, and terminated all and any fiduciary character with respect thereto, waiving all and any claim for damages by reason of any tort with respect to the use of such proceeds.

The defendants then set up as a third and partial defense and counterclaim that on the sixth of August, 1896, a settlement of the accounts was had between the parties, including the transactions mentioned in the complaint, whereby it was found and determined that the defendants owed the plaintiff only the sum of $13.71 which they agreed to pay on demand.

For a fourth and separate defense and counterclaim the defendants alleged that in 1895 there were certain agreements and transactions between the plaintiff and Ferrin Brothers Company, a domestic corporation, whose place of business was in Rochester, for the handling and selling of farm produce, and upon such dealing between the corporation and the plaintiff there was a balance due the corporation in the sum of $729.01, and that that cause of action was assigned by the corporation to the defendants which they sought in this action to counterclaim against the plaintiff's demand.

Upon the trial, when the evidence was closed, the court held that the action was for money received by the defendants in a fiduciary capacity, and, consequently, that the assigned claim to the defendants could not be counterclaimed in this action. The defendants then asked to be permitted to submit

to the jury the questions whether there had been a conversion; whether there was any fiduciary relation between the parties, and whether or not that fiduciary relation was terminated before the commencement of the action. This was denied and the defendants excepted. The court thereupon directed a verdict for the plaintiff for $949.14. A motion was made for a new trial on the minutes, based upon the exceptions taken at the trial, which was denied. The defendants thereupon appealed to the Appellate Division from the judgment and order, where both were unanimously affirmed.

*Nelson E. Spencer* for appellants. The court having directed a verdict, appellants are entitled to the most favorable inferences deducible from the evidence, and all disputed facts are to be treated as established in their favor. (*McDonald* v. *Metropolitan Ry. Co.*, 167 N. Y. 66.) The usages proven were reasonable, uniform, well settled, not in opposition to the fixed rules of law, not in contradiction of any express terms of contract between the parties, and must be deemed, therefore, to have entered into the intention of the parties. (*Hinton* v. *Locke*, 5 Hill, 437; *Walls* v. *Bailey*, 49 N. Y. 464; *Newhall* v. *Appleton*, 114 N. Y. 140; *Robertson* v. *N. S. Co.*, 139 N. Y. 421; *Johnson* v. *De Peyster*, 50 N. Y. 666; *Smith* v. *Clews*, 114 N. Y. 194.) An action in tort does not lie against defendants. Plaintiff's sole cause of action was on contract. (*Connaughty* v. *Nichols*, 42 N. Y. 83; *Greentree* v. *Rosenstock*, 61 N. Y. 583; *Laverty* v. *Snethen*, 68 N. Y. 522; *Segelken* v. *Meyer*, 94 N. Y. 473; *Harris* v. *Shultz*, 40 Barb. 315; *Stoll* v. *King*, 8 How. Pr. 298; *White* v. *Platt*, 5 Den. 269; *Commonwealth* v. *Stearns*, 43 Mass. 343; *Vail* v. *Durant*, 89 Mass. 408; *Steamship Co.* v. *Seager*, 31 App. Div. 288.) It was error to exclude defendants' counterclaim. (Code Civ. Pro. §§ 500, 501; *Steamship Co.* v. *Seager*, 31 App. Div. 288; *Rosenburg* v. *Block*, 102 N. Y. 255; *Moffatt* v. *Fulton*, 132 N. Y. 519.) Plaintiff failed to prove any actionable wrong. (*N. B. & D. Bank* v. *Hubbell*, 117 N. Y. 384; *Smith* v. *Ogilvie*, 127 N.

Y. 143; *Moffatt* v. *Fulton*, 132 N. Y. 507; *Stoll* v. *King*, 8 How. Pr. 298; *White* v. *Platt*, 5 Den. 269; Mechem on Agency, § 1022; Russell on Factors & Brokers, 271; *Decatur* v. *Goodrich*, 44 Hun, 3; *Liddell* v. *Paton*, 7 Hun, 195; *Buchanan* v. *Woodman*, 1 Hun, 639; *Morange* v. *Waldron*, 6 Hun, 529; *Chapman* v. *Forsyth*, 2 How. [U. S.] 202; *Donovan* v. *Connell*, 9 Civ. Pro. Rep. 222.) There was evidence that plaintiff had made a final election to ratify defendant's treatment of the matter as a mere debt and had waived his right of action in tort, if he ever had any, and defendant should have been allowed to go to the jury. (*Cairnes* v. *Bleeker*, 12 Johns. 300; *Vianna* v. *Barclay*, 3 Cow. 281; *Jervis* v. *Hoyt*, 2 Hun, 637; *Bowen* v. *Mandeville*, 95 N. Y. 237; *Conrow* v. *Little*, 115 N. Y. 387; *Terry* v. *Munger*, 121 N. Y. 161; *Moller* v. *Tuska*, 87 N. Y. 166.)

*John Desmond* for respondent. The relation between a commission agent for the sale of goods and his principal is fiduciary; and, in the absence of an express agreement or one implied by the course of dealing between them, giving the former the right to appropriate to his own use the proceeds of sales of the principal's goods, such proceeds belong to the principal. (*Baker* v. *N. Y. Nat. E. Bank*, 100 N. Y. 31; *Moffatt* v. *Fulton*, 132 N. Y. 507; Mechem on Agency, §§ 454–457, 1007; *Kelley* v. *Bradley*, 9 Hun, 283; *Wallace* v. *Castile*, 14 Hun, 106; *Moore* v. *Hillabrand*, 37 Hun, 491; *Dugurd* v. *Edwards*, 50 Barb. 288; 100 N. Y. 34.) This is an action in tort. (Code Civ. Pro. §§ 549, 1487; Mechem on Agency, §§ 454–457, 1007; *R. D. Co.* v. *O'Brien*, 72 Hun, 462; Russell on Factors & Brokers, 272, 273; *Moffatt* v. *Fulton*, 132 N. Y. 507; *Fayerweather* v. *Tucker*, 11 N. Y. Supp. 39; *S. S. R. Co.* v. *Dayton*, 70 N. Y. 486; *Roehr* v. *Dawson*, 15 Civ. Pro. Rep. 417.) In an action of tort a counterclaim on contract cannot be interposed. (*Davis* v. *Aikin*, 85 Hun, 554; *R. D. Co.* v. *O'Brien*, 72 Hun, 462; *People* v. *Dennison*, 84 N. Y. 273; *Smith* v. *Hall*, 67 N. Y. 48; Russell on Factors & Brokers, 273, 274.)

MARTIN, J. That the defendants were commission mer-
chants to whom the plaintiff shipped three carloads of fruit
and onions to be sold by them on commission, which they sold,
the proceeds netting $742.72, was plainly established and is
not denied. The plaintiff demanded this sum of the defend-
ants, which they refused to pay. The only manner in which
they sought to defeat or diminish the plaintiff's recovery
therefor was by means of a counterclaim based on an account
or debt they purchased against him, amounting to nearly that
sum. The trial court held that such a counterclaim could not
be allowed in this action, and directed a verdict for the plain-
tiff for the amount of his demand. The exceptions of the
defendants to that direction and to the refusal of the court to
submit certain matters to the jury, present the only question
involved upon this appeal.

The defendants endeavored to sustain the theory that a
demand assigned to them by a third person might be counter-
claimed against the defendants' cause of action, by denying
that they received the plaintiff's goods or the proceeds thereof
in a fiduciary capacity, and by proving that there were certain
general customs and usages in that business with reference to
receiving, handling and accounting for goods consigned to
them by shippers, which were usual among commission mer-
chants, and that they handled the proceeds of merchandise
consigned by him to the defendants in the fall of 1895, in
accordance with those customs. The proof was that it was
the general custom to receive shipments, pay the charges, sell
the goods to the best possible advantage as promptly as pos-
sible, render account of sales to the shipper as fast as ship-
ments were closed out, and to at once pay the net proceeds
by their check; that the goods were sold to the best advantage
both for cash and on time, that they were sold on credit only
to responsible parties, but if losses followed the commission
merchant was to sustain them; that all the receipts for prod-
uce sold were placed in one drawer, from which change and
deposits in the bank were made; that the proceeds of the
particular property of each shipper were not kept separate;

that when commission merchants have an account with a shipper and he consigns them goods and owes an account when the account of sales is rendered, it was the custom to deduct the amount from the sales so rendered; that that statement referred only to cases where a shipper was overpaid, or where he purchased goods of his factor which were charged to his account and shipments were afterwards received. In such an event, the sales were rendered, a statement of his account and of the balance due was made, and a check sent for the balance. It was not, however, proved that it was the custom of commission merchants to purchase other accounts against their customers and offset or counterclaim them against the proceeds of a sale of their property, but it was proved that such was not the custom.

The foregoing is in substance the only evidence that was given upon the question of custom or usage. That the testimony related to the custom of the commission business in the city of Buffalo is quite obvious. There was no proof that the plaintiff had any knowledge of such custom or usage, except such as arose from the previous dealings between the parties. It appears from the evidence that during the fall of 1895 and 1896 the defendants received a number of consignments from the plaintiff, and that during that time, with the exception of the three instances involved in this litigation when accounts of sales were sent, a remittance for the proceeds was sent in the same letter. There was no other instance when the remittance did not accompany the letter and account of sale, and such remittances were made immediately upon the sale of a carload of goods.

Whether, where the usage sought to be established relates to a particular trade or locality, it must appear that it was known to the party before he is bound by it so as to make it a part of his contract, or whether the burden of proof is upon him to establish his ignorance of such usage, as to which there seems to be some conflict in the previous cases, need not now be decided, as it is evident that the course of business between the parties which existed previous to the transactions

16

in question was the same as the usage proved by the defendants. That usage or custom cannot be proved for the purpose of controlling rules of law or to contradict the agreement between the parties, is not and cannot be denied. Moreover, there was no proof in this case of any usage which included the right of a factor to pay the debts of his principal to others without his authority, or to accomplish that result indirectly by purchasing claims of third persons against him.

Before proceeding further in the discussion, it is proper to consider the relation which existed between the plaintiff and defendants. The defendants were commission agents or factors of the plaintiff for the sale of his goods. The relation between a commission agent or factor for the sale of goods and his principal is fiduciary, and in the absence of an express agreement or one implied from the course of business or dealing between the parties, giving to the former the right to appropriate to his own use the proceeds of sale, they belong to the principal, subject only to the lien of the agent for commissions and other advances and charges, and the principal may follow and reclaim them so long as their identity is not lost, subject to the rights of a *bona fide* purchaser for value. Such agents cannot deal with the property of their principal or with the proceeds thereof as their own. If in the usual course of business a factor has been in the habit of remitting proceeds of consignments without demand from the consignor, it is the factor's duty to remit the proceeds of future consignments without waiting for demand, and a cause of action accrues upon the receipt of such proceeds and his failure to remit. Where one intrusts his property to another for a particular purpose, it is received in a fiduciary capacity, and when turned into money that is also received in the same capacity. It does not belong to the agent, and he can lawfully exercise no power or authority over it except for the benefit of his principal, and only as authorized by him. If the agent uses it for his own purposes, or fails to pay it over upon a seasonable demand, it is a conversion of that

which does not belong to him. (*Baker* v. *New York National Ex. Bank,* 100 N. Y. 31; *Com. Nat. Bank of Penn.* v. *Heilbronner,* 108 N. Y. 439, 444; *Middleton* v. *Twombly,* 125 N. Y. 520; *Moffatt* v. *Fulton,* 132 N. Y. 507, 515.)

The cause of action alleged in the complaint and established on the trial is within the principle of these cases, and under the provisions of section 549 of the Code of Civil Procedure the action is one where the defendants could be arrested and where an execution against the person might be issued under section 1487. Whatever may have been the rule as to the liability of factors upon their refusal to surrender to their principal the avails of property consigned to them for sale anterior to the amendment of section 549 in 1886, we think that amendment plainly evinces an intent by the legislature to place an action to recover money received by a factor, agent, broker or other person in a fiduciary capacity within the category of torts, and to secure to a principal the same rights and remedies that exist as to other wrongs of a similar character. In such an action, under the provisions of that section, the important and controlling issue is as to the tort or wrongdoing of the defendant. If it is established, then the plaintiff is entitled to a judgment in tort, and the added remedy of an execution against the person of the defendant is given. If the tort be not proved, then the plaintiff cannot recover in such an action, but it is not a bar to an action on contract to recover the money due thereon. Thus, it seems clear that the legislature regarded an action brought to recover money received by an agent or factor in a fiduciary capacity, which he refuses to deliver to his principal to whom it belongs, as one of tort and to secure to a plaintiff the same remedies as in actions for fraud, conversion or other similar misconduct. This is sustained by *Moffatt* v. *Fulton* (132 N. Y. 507); *Rochester Distilling Co.* v. *O'Brien* (72 Hun, 462), and *Davis* v. *Aikin* (85 Hun, 554, 556). If this conclusion is correct, it follows that the trial court properly refused to permit the defendants to prove their alleged coun-

terclaim, and, as there was no conflict as to the facts, the court properly directed a verdict for the plaintiff.

There is also another ground upon which we think the judgment in this action should be affirmed. The relation between the parties being that of principal and factor, it existed and continued until the final completion of the trans-action, which included the delivery of the proceeds of the sale to the plaintiff, and until that was done they were not relieved from their responsibility as such. They were still the plaintiff's agents and bound by the principles of law which govern that relation.

An agent cannot deny the title of his principal to the subject of the agency, nor protect himself against the suit of the principal, by setting up an adverse title in a third person. (Dunlap's Paley on Agency, 10.) Nor can a trustee purchase debts against the principal or estate of which he is trustee for his own benefit, or deal with the estate for his own emolument. (*Van Horne* v. *Fonda*, 5 Johns. Ch. 388.) "It is an elementary principle that an agent cannot take upon himself incompatible duties, and characters, or act in a transaction where he has an adverse interest or employment." (*Murray* v. *Beard*, 102 N. Y. 505, 508; *Whitehead* v. *New York Life Ins. Co.*, 102 N. Y. 143, 156.) The law prohibiting a trustee from purchasing property of his *cestui que trust* stands upon the principle that one who undertakes to act for another shall not in the same matter act for himself. Such an act, although it may not originate in any purpose to defraud, is a constructive fraud, because the natural tendency is mischievous and harmful. , "The rule is not limited in its application to those who are trustees strictly, holding the legal title to the thing purchased. It applies to agents and persons standing in relations of trust and confidence to others, which involves duties inconsistent with their dealing with the property as their own." (*Ten Eyck* v. *Craig*, 62 N. Y. 406, 419; *Mitchell* v. *Reed*, 61 N. Y. 123; *Holbrook* v. *Wight*, 24 Wend. 169.) Loyalty to his trust is the first duty of an agent to his principal. Fidelity in the agent is required, and as a

means of securing it, the law will not permit him to place
himself in a situation where he may be tempted by his own
private interest to disregard that of his principal. Hence, he
may not place himself in r_ations antagonistic to him. He
may not deal in the business of his agency for his own bene-
fit. Factors, like other agents in whom trust and confidence
are reposed, owe to their principals a high degree of fidelity
and good faith. The latter has the right to demand from him
an undivided allegiance to his interests, and the factor will not
be permitted to put himself in a position where his own inter-
ests will come in conflict with those of his principal. (Mechem
on Agency, §§ 454, 456, 1007.) Under no circumstances can
a trustee set up a claim to the trust property adverse to the
*cestui que trust*, nor can he deny his title. (1 Perry on
Trusts, § 433.)

Under these principles of law which define the duties of
agents or factors to their principal, we think the defendants
cannot justify the retention of the plaintiff's money, received
and held by them in a fiduciary capacity, or defeat or diminish
a recovery therefor by purchasing the claim of a third person
against him. They were not justified in dealing with the pro-
ceeds of their principal's property to their own advantage by
any such course of procedure. Nor could they thus determine
the manner in which the money in their hands belonging to
the plaintiff should be employed. As was said by Judge
VANN in the *Moffatt* case: "After they received the money
on the notes, they had no right to keep it, or even to pay it
out on his account, but it was their duty to at once pay it over
to him. They received it in trust for him, and the refusal to
pay it over was not a refusal to pay a debt, but to deliver
that which belonged to him." Although the defendants were
the agents and trustees of the plaintiff for the sale of his
goods, the collection of the proceeds, and to pay the same
over to him, they were in no way constituted trustees to pay
his creditors. If they might not pay his creditors directly, it
cannot be done indirectly by purchasing claims against him
and thereby discharging their liability. Such a doctrine

would be in conflict with every principle of the law of agency and repugnant to the general principles of public policy. Such a principle once adopted would sap the very foundation of the law of agency which is based upon the loyalty and fidelity of the agent. It would place the principal in the power of his agent, not only as to the subject of his agency but would constitute him a trustee for the final distribution among his creditors of that portion of his estate. If such a doctrine can be maintained in this case, why may it not be sustained as to attorneys, collecting agencies and the various other instrumentalities employed in commercial transactions and other enterprises where the employment of agents is necessary? The purchase of a claim against the plaintiff and an attempt by the defendants to enforce it as a counterclaim in this action, was clearly an effort by them to deal with the funds of their principal for their own benefit, and thereby they assumed a position incompatible with their duties, adverse and antagonistic to the rights of their principal, and which were in direct conflict with his interest. This they could not legally do, and the courts should not aid them in accomplishing their end by permitting such a counterclaim.

We think there was no question of election of remedies involved in the case, and that the court was justified in rejecting the defendant's offer relating to a former suit in the Municipal Court which was not tried, as the offer did not include the proposition that that action was on contract and not in tort.

For these reasons we think the judgment of the Appellate Division should be affirmed, with costs.

PARKER, Ch. J., GRAY, O'BRIEN, VANN, CULLEN and WERNER, JJ., concur.

Judgment affirmed.