## CARCABA et al. v. McNAIR et al.

## SOLLA v. SAME.

### No. 7059.

Circuit Court of Appeals, Fifth Circuit.
Jan. 27, 1934.

George C. Bedell, of Jacksonville, Fla., and David R. Dunham, of St. Augustine, Fla., for appellants.

Frank D. Upchurch, of St. Augustine, Fla., Cary D. Landis and H. E. Carter, both

of Tallahassee, Fla., and Kenneth I. McKay, of Tampa, Fla., for appellees.

Before BRYAN, SIBLEY, and WALKER, Circuit Judges.

## SIBLEY, Circuit Judge.

Two appeals are here on one record in which the complainants, now appellants, seek to assert liens against the securities of a failed National Bank in the hands of the treasurer of Florida to secure judgments obtained on the operations of the bank's trust department, and also against the general assets which came into the hands of the bank's receiver. The facts are not in dispute. First National Bank of St. Augustine was by the Federal Reserve Board given power to act as a fiduciary under 12 USCA § 248 (k). On November 5, 1928, it was appointed administrator de bonis non cum testamento annexo of the estate of Pantaleon Felix Carcaba, who had died in 1906 owing no debts and leaving a will in which all his estate was given to his wife for her life and after her death to his son and daughter equally. The widow probated the will in Florida and qualified as executrix, enjoyed the life estate, and died leaving some of the property unadministered. The son also died, but is represented by two sons who with the testator's daughter, Mrs. Solla, are the present complainants. The testator left as part of his estate realty in Cincinnati, Ohio, which was rented out, and the bank, after its appointment, began to collect the rents with the acquiescence of complainants. Its trust officer soon afterwards sought complainants and obtained their consent to have the bank sell the Ohio property, with the distinct understanding that the business would be done through the bank's trust department in connection with the administration, and would be protected by the securities deposited under the law for the safety of trust funds, the proceeds of the land to be distributed to them and not held for any further reinvestment. The bank through correspondence in which it always signed as administrator made a sale through a Cincinnati broker, collecting $2,500 earnest money in January, 1929, the complainants then signing a contract to make title on full payment. About April 15th, the bank prepared and had them sign a warranty deed which was by it attached to a draft for the net balance of $21,428.22, and sent the draft and deed to a bank in Cincinnati, accompanying them with a letter signed as administrator directing that the proceeds be remitted to the Federal Reserve Bank in Atlanta "for our credit and advice to our trust department." Both this and the previous collection of $2,500 went in the Federal Reserve Bank to the general credit of the St. Augustine Bank, but entries concerning it were all made in the trust department of the latter on the administrator's account along with the collections of the monthly rent. A few weeks later, the bank sought to settle its accounts as administrator in the probate court, including in them the rents and the proceeds of this sale and taking credit for a charge of $1,500 for making the sale in addition to $1,000 paid the Cincinnati broker. But the probate court excluded the transactions from the account, apparently holding the lands not to have been part of the estate to be administered. On July 5th, still deducting the charge of $1,500, the bank sent each complainant a check for his share of the proceeds signed First National Bank of St. Augustine, trust department, by W. H. Nobles, trust officer, stating that it was "for account of P. F. Carcaba Estate," and payees' share of the proceeds of sale. The form of indorsement required to be signed on the check contained a receipt in full. The complainants did not cash these checks, being dissatisfied with the bank's charge. On July 17th, through their attorneys, a reduction of the charge by $400 was agreed to and additional checks in similar form for this difference were made out, but because of absence, illness, or delay in delivery none had been presented for payment when on July 24th the bank closed. Mrs. Solla's check was not issued until that day. The pleadings show that all claims against the trust department have been settled except these, and the state treasurer still has $32,500 of municipal bonds in his hands deposited under Comp. Gen. Laws Fla. § 6131. The bank is insolvent. At the time of its failure the balance of its account at the Federal Reserve Bank had been reduced to $143.

 We agree with the ruling of the District Court that the complainants have not accepted the checks in satisfaction of their claims. There are no other parties to the checks to be prejudiced by the delay in their presentation, if there was in any instance undue delay. A check is not payment until itself paid unless expressly accepted as payment. The complainants can reject the bad checks and stand on their original rights. Jefferson Standard Ins. Co. v. Wisdom (C. C. A.) 58 F.(2d) 565; Holder v. Western Bank (C. C. A.) 136 F. 90; Bryan v. Coconut Grove Bank, 101 Fla. 947, 132 So. 481, 134 So. 229.

██ It is unquestionably true that the land in Ohio and its rents and proceeds were not assets of the testator's estate to be administered by the administrator de bonis non. Under the will the property was fully and unconditionally disposed of by a life estate in the wife and a vested remainder in fee in the named children. Assent to the devise of the life estate, evidenced by its enjoyment by the life tenant who was also executrix, operated to vest also the remainders. If the will was not probated or probatable in Ohio, the facts nevertheless show the complainants to have had title as heirs-at-law. In no view was the land subject to be administered again. The administrator in fact did not attempt to convey the title, but took first a contract of sale and then a deed signed by the devisees and heirs. The money received from the land was not assets of the estate. Now the securities deposited with the state treasurer under the Florida law relating to trust companies stand in lieu of fiduciary bonds that might otherwise be required. Comp. Gen. Laws § 6130, as amended by Acts 1929, c. 13576, § 29; Knott, Treasurer, v. Morris, 101 Fla. 1299, 134 So. 615. While an administrator may sometimes estop himself to deny the character in which he received property, it is well settled in Florida and elsewhere that his bond cannot be charged for the receipt of money which in fact was not assets of the estate even though he collected it as administrator. Bradford v. Watson, 65 Fla. 461, 62 So. 484; Pace v. Pace, 19 Fla. 438; Probate Court v. Williams, 30 R. I. 144, 73 A. 382, 19 Ann. Cas. 554, and cases cited in note. No more should the security deposited with the treasurer be subject to exhaustion by such claims.

██ But this does not end the inquiry. Although the bank, as administrator, could not rightly receive this money, it remains true that it got it under a special agreement with the complainants that as their agent it would collect the rents, sell the land, receive the proceeds, and hold them for a distribution along with the estate under administration, and that this should all be done by the trust department through its trust officer, with whom alone they dealt, and under the protection of the deposited securities. The bank in every letter, book entry, and check in relation to this matter indicated as fully as possible that the transaction was not intended as a commercial but as a trust transaction. Its compensation of $1,100 it could justify on no other basis. It was to be first an agent to rent, then to sell, then to collect and hold the proceeds for distribution. A single act was not contemplated, but an activity covering months. In the collection of the purchase price the complainants did not draw drafts payable to their order with the proceeds subject to their direct control. The trust officer under the title of administrator collected the money and it passed to the credit of the bank and remained for weeks under control of the trust department. The complainants could not get or divide it, for the power of distribution and the possession and title had been vested in the bank as a trust. The question is whether that sort of arrangement comes within the powers of the trust department. 12 USCA § 248 (k), provides that a national bank under authorization of the reserve board may "act as trustee, executor, administrator, registrar of stocks and bonds, guardian of estates, assignee, receiver, committee of estates of lunatics, *or in any other fiduciary capacity* in which State banks, *trust companies,* or other corporations which come into competition with national banks *are permitted to act under the laws of the State* in which the national bank is located." The words fiduciary capacity are capable of a very broad meaning. That agencies are in view is apparent from the mention of registrar of stocks and bonds which is a mere agency. An agent is generally regarded as a fiduciary though he is not a technical trustee. 2 C. J., Agency, § 353; 25 C. J., Fiduciary, p. 1118; Britton v. Ferrin, 171 N. Y. 235, 63 N. E. 954. Money in an agent's hands was held to be a trust in National Bank v. Insurance Co., 104 U. S. 54, 26 L. Ed. 693, and Dillman v. Hastings, 144 U. S. 136, 12 S. Ct. 662, 36 L. Ed. 378. The constitutionality of this provision in all its breadth was sustained on the idea that Congress must have power to make the national institution succeed in competition with similar state institutions, with the consequence that whatever the state permits to its competing financial institutions the United States can permit to national banks. First National Bank of Bay City v. Fellows, 244 U. S. 416, 37 S. Ct. 734, 61 L. Ed. 1233, L. R. A. 1918C, 283, Ann. Cas. 1918D, 1169. The state of Florida, Comp. Gen. Laws, § 6126, gives authority to trust companies not only to act in the capacities specifically mentioned in the federal statute, but also "3. To receive deposits of trust moneys * * * from any person or corporation" and "8. To take, *accept and execute any and all* such legal trusts, *duties and powers* in regard to the holding, management and *disposition of any estate, real* or personal, and the rents

and profits, *or the sale thereof,* as may be granted *or confided to it* by any court of record, or *by any person,* corporation, municipal or other authority, and it shall be accountable to all parties in interest for the faithful discharge of every such trust, duty or power which it may so accept." These authorities therefore appertain to the trust department of this national bank. In this case we have an Ohio estate of realty, and a power to rent and to sell it with a duty to receive and distribute the proceeds confided by three persons and accepted by the bank. It falls within the words italicized above in paragraph (8). The money when collected by the bank was to be trust money not belonging to the bank though standing in its name and subject only to its control. By the words of paragraph (3) it might be received by the trust department as a trust deposit, not subject to check as a commercial deposit, but for safekeeping until disposed of. As such, by the requirement both of Comp. Gen. Laws, §§ 6128 and 6129, and 12 USCA § 248 (k), it ought to have been kept separate from the bank's commercial assets and not used by the bank unless substituted by a special deposit of approved bonds. The agreement of the parties here thus to deal was not ultra vires under the powers given a Florida trust company and made exercisable by a national bank in that state. But 12 USCA § 248 (k) declares: "No national bank shall receive in its trust department deposits of current funds subject to check or the deposit of checks, drafts, bills of exchange, or other items for collection or exchange purposes." This in the District Court was thought fatal to complainants' claim. We think otherwise. The deposits which are prohibited are not those made by the trust department in the exercise of its functions, but those made with the trust department by the bank's customers. The purpose is to prevent such customers in their ordinary commercial transactions from obtaining a preferential security over other commercial customers contrary to the general policy of the National Bank Act. See Texas & Pacific R. R. Co. v. Pottorff (C. C. A.) 63 F.(2d) 1.

Here the complainants made no deposit of current funds subject to their check. They deposited no draft for collection. Their only transaction with the bank was to intrust it with the management and sale of the land and with the collection and disbursement of the proceeds, a continuing activity which lasted six months. This was an activity, as we have seen, expressly permitted to the trust department but one which the bank in its commercial department could not properly have undertaken, because such a power is not expressly granted to and not necessary to the operation of a commercial bank; although had it undertaken the activity and received money thereby it could be held accountable for it. First National Bank of Grand Forks v. Anderson, 172 U. S. 573, 19 S. Ct. 284, 43 L. Ed. 558; Logan County National Bank v. Townsend, 139 U. S. 67, 11 S. Ct. 496, 35 L. Ed. 107; 3 R. C. L., Banks, § 51. The trust department under the power confided to it drew drafts on Cincinnati, but their proceeds wrongfully went to the credit of the commercial side of the bank without being substituted by approved bonds. The money or substituted bonds should have stood as a special deposit of trust funds in the trust department until distributed to the owners. The trust department is, in the words of section 6126 (8), accountable to the parties in interest for the faithful discharge of every such trust, duty or power which it may so accept. For its breach of trust the bonds deposited with the state treasurer are subject to a lien.

The answers of the receiver say there are no claims except complainants' against the deposited bonds. Some of the evidence, however, indicates there may be others. If that source of payment should prove insufficient, the complainants may have recourse to tracing their diverted money. We find no fault with the holding of the District Court that while they have traced it into the account at the Federal Reserve Bank, it is not traced into the cash in the receiver's hands. Currency to the amount of $40,000 in all was shipped by the Federal Reserve Bank to the St. Augustine Bank during April, 1929, after complainants' money was deposited, but no shipment is proved to be connected in any way with this business, and the balance due by the Reserve Bank after each shipment exceeded the amount of complainants' funds there, so that there was no necessary encroachment on them. It does not appear how this balance was withdrawn, nor does it appear from what source the cash came that was on hand at St. Augustine July 24th and which came to the receiver. The tracing of complainants' funds into this cash fails. Armour Fertilizer Works v. Smith, Trustee (C. C. A.) 68 F.(2d) 794; Pottorff, Receiver, v. Key (C. C. A.) 67 F.(2d) 833; Hancock County v. Hancock National Bank (C. C. A.) 67 F.(2d) 421. The judgments are accordingly reversed, and the cas-

es remanded with direction to enter decrees in favor of complainants for a lien against the bonds in the treasurer's hands, and, if they prove insufficient, for a lien on any balance collected by the receiver from the Federal Reserve Bank, and for a general claim against the receiver as respects any balance left unpaid.