QUESTION: Can the Department of Professional and Occupational Regulation require that payment of licensure fees for the Board of Cosmetology or any regulatory boards under the department's jurisdiction must be by certified check or money order?
SUMMARY: The Department of Professional and Occupational Regulation can only require that payment for licensure fees for the various licensing and regulatory boards be made in cash. The department at its own peril and liability may accept a check, a bank cashier's check, a certified check, or a money order as conditional payment of such licensure fees subject to its responsibility to collect on any check, draft, or money order returned to it by the state treasurer pursuant to s. 215.34, F.S. However, the department head is not authorized by statute to require payment of such license fees by any medium of payment other than U.S. legal tender or money. Chapter 69-106, Laws of Florida [s. 20.06(2), F.S.], states in part: . . . For any agency assigned a type two transfer, the collection of license fees and other revenues, payroll, procurement, and related administrative functions shall be exercised by the head of the department to which the board is assigned. It is apparent from reading the above statutory language that the authority for the collection of fees and other revenues under a type two transfer is vested in the department head to which the agency is assigned. The Board of Cosmetology and the various other licensing and regulatory boards were assigned to the Department of Professional and Occupational Regulation by a type two transfer. Section 20.30(9) and (10), F. S. Because the authority to collect fees is specifically given to the department head, the licensing and regulatory boards of the department do not have any authority to require or request the method or mode of payment of licensure fees or other revenues since this is an exclusive function of the department head. Section 1, Ch. 73-97, Laws of Florida [s. 20.30(5), F.S.], states in part: (5) The head of the department may assign the bureau of records administration responsibility for the following administrative functions: Issuance of license, collection of fees, establishment of a uniform renewal license form for all boards and commissions, establishment of renewal and delinquency periods with the concurrence of the boards and commissions affected, and maintenance of
nonconfidential records of the department. . . . (Emphasis supplied.) Although the above statute provides the agency head of the Department of Professional and Occupational Regulation with discretion to assign the responsibility for the collection of fees and other administrative duties to the Bureau of Records Administration, the overall responsibility for such functions lies with the department head. Section 215.37(2), F.S., provides that once fees, licenses, and other charges have been collected by the Bureau of Records Administration of the Division of General Services of the Department of Professional and Occupational Regulation, these collections shall be deposited in the state treasury into a separate trust fund to the credit of the individual board. Thus, the department has not only been given the responsibility for collecting fees but for depositing those fees in the state treasury as well. In reviewing the statutes of the boards found within the department, it appears the legislature in creating the various boards authorized the collection of fees stating the amount to be collected in words [e.g., s. 477.17(1)(a), F.S., Cosmetology Law and s. 476.16, F.S., Barbers Law]; in other statutes the amounts to be collected are stated in figures [e.g., s. 448.09, F.S., Construction Industry Licensing Board]; while in other statutes both words and figures are used [e.g., ss. 484.04 and 484.08, F.S., Dispensing Opticians]. The various descriptions of the amounts payable seem to connote and contemplate the medium of payment for the licensing fees, examination fees, renewals, etc., is legal U.S. tender — cash — and no other medium is authorized by such statutes to be accepted as payment for such licenses, fees, or renewals except cash. It appears, therefore, the collecting officer has no implied or inherent authority to accept any other medium of payment, except at his own personal peril and liability. An agency is limited to the powers granted, either expressly or by necessary implication, by the statute creating it. St. Regis Paper Co. v. State,237 So.2d 797 (1 D.C.A. Fla., 1970); 1 Fla. Jur. Administrative Law s. 22. Accord: Attorney General Opinions 058-228 and 073-26. A check is not payment unless accepted as such. Carcaba v. McNair,68 F.2d 795, cert. denied McNair v. Carcaba, 292 U.S. 646 (1934). Wadsworth v. State, 142 So. 529 (Ala. 1932). The delivery to, or acceptance by, the creditor of the debtor's check, although for convenience often treated as the passage of money, is not payment, even though the check is certified before delivery, in the absence of any agreement or consent to receive it as payment, any laches or want of diligence on the part of the creditor, or negotiation of the check by him. [See] 70 C.J.S. Payment s. 24. In such cases, the original debt is not paid or discharged unless, and until, the check is actually paid on due presentment, or, it is sometimes stated, until it is honored or accepted by the drawee; when the check is not paid on presentment, the creditor may treat it as a nullity, return it, and recover on the original debt, or, at his option, sue on the check. Id. When checks are received as a convenient means of transacting business or transmitting money they are — in the absence of authorized contract or statute to the contrary — received for collection as a conditional payment subject to collection and not payment. Thomas v. Prudential Ins. Co. of America, 104 F.2d 480 (4th Cir. 1939); Hamilton v. R. S. Dickson and Co., 85 F.2d 107 (2nd Cir. 1936); Ross v. State Life Ins. Co., 143 So. 827 (Ala. 1932). It is the customary practice of some state and county officials to accept checks in payment of certain licenses and taxes, contrary to the general rule that absent statutory authority taxes must be paid in cash or money or legal tender, 84 C.J.S. Taxation s. 623; accord: Peninsula Land Co. v. Howard, 6 So.2d 384, 390 (Fla. 1942); Wadsworth v. State,142 So. 529 (Ala. 1932); AGO 073-26. The legislature has apparently given tacit recognition to the above practice, as can be gleaned from s. 832.06, F.S., as amended by Ch. 74-348, Laws of Florida, which provides for the refund to the tax collector of certain license taxes, excise taxes, and license fees in the circumstances and on the conditions specified when paid by a check that turns out to be worthless. Cf. s. 215.34, F.S., providing the procedure, as between the state treasurer and agency making the deposit, for processing a worthless check given in any payment of any "license, fees, taxes, commission or charges of any sort authorized to be made under the laws of the State and deposited in the state treasury. . ." In AGO 073-26, I stated: It might be noted that there is nothing in such statutes [s. 832.06 and s.215.34, F.S.] to indicate that the acceptance of the check by the official constitutes anything other than a conditional payment and that if the check is never presented or is dishonored, the tax or fee remains a charge. 84 C.J.S. Taxation, s. 623, page 1243. As indicated above, although the department is not authorized by law to accept checks, drafts, money orders, etc., in payment of licenses or license fees, this does not mean that for the convenience of the licensees, the public, and for convenience (and safety) in transmitting funds to the state treasurer, the department may not accept checks as a conditional payment — subject to collection and payment by the bank or other institution upon which drawn — if the department is willing to and does assume its responsibility to collect on any returned check, draft, money order, etc., returned to it by the state treasurer as provided in s. 215.34, F.S. It must be carefully noted, however, that the department is charged with the issuance of licenses. Section 20.30(5), F.S. It cannot suspend, revoke, or withdraw licenses; so, if a check for which a license is actually issued is returned uncollected and unpaid, the department cannot suspend, revoke, or withdraw that which it has already issued and delivered because this would be an infringement on the exclusive powers of the licensing and regulatory boards. However, the department as the issuing and collecting agency could take the appropriate legal action in the small claims division of the county court to recover any amount in default. As stated earlier, it appears that s.215.34, F.S., tacitly recognizes the practice of accepting checks by state officials although it falls short of authorizing, condoning, or ratifying such conduct and doesn't in any manner exculpate the tax, fee, or revenue collector. However, this does not prohibit the department from legally demanding cash on delivery for the payment of any license, renewal, or other fees. Therefore, I come to the conclusion that the Department of Professional and Occupational Regulation can only require that payment for licensure fees for the various licensing and regulatory boards be made in cash. The department at its own peril and liability may accept a check, a bank cashier's check, a certified check, or a money order as conditional payment of such licensure fees subject to the limitations discussed herein. However, the agency head is not authorized by statute to require payment of license fees by any medium other than U.S. legal tender or money.